William R. CAMPBELL,
Plaintiff-Appellant,

v.

Otis BOWEN, Secretary of the Department of Health & Human Services,
Defendant-Appellee.

No. 85–2160.

United States Court of Appeals,
Tenth Circuit.

July 9, 1987.

Eric G. Melders (Jack E. Gray, with him on the briefs), Oklahoma City, Okl., for plaintiff-appellant.

Debra Hollis (Edwin L. Meese, U.S. Atty. Gen., Washington, D.C., William S. Price, U.S. Atty., Oklahoma City, Okl., Gayla Fuller, Regional Atty., Patrick A. Hudson and Valerie Olds, Asst. Regional Attys., U.S. Dept. of Health and Human Services, Washington, D.C., on the brief), for defendant-appellee.

Before McKAY, McWILLIAMS and TACHA, Circuit Judges.

TACHA, Circuit Judge.

William R. Campbell appeals from a judgment of the district court affirming a denial of social security disability benefits. Campbell claims, among other things, that

the Secretary of Health & Human Services erred in finding that substantial work exists which Campbell is capable of performing and that he is therefore not medically disabled. We reverse.

Appellant, a former carpenter and construction contractor, was diagnosed in 1970 as having a bi-polar psychosis, manic depressive type, and has been hospitalized several times for problems stemming from the disorder. He has also had arthritis of the knees. Campbell injured his right knee on the job in June 1980 and has not been able to work since December 1980.

Campbell filed an application for disability benefits on March 23, 1982, at the age of 55. The Secretary denied the claim initially, and again on reconsideration, after two physicians and a disability examiner reviewed the evidence and found Campbell was not disabled. Appellant's claim was reviewed de novo by an administrative law judge, who found that Campbell was capable of performing sedentary work and was therefore not disabled.

Campbell sought review before the Appeals Council. The Appeals Council found that while the claimant had a high school education, his schooling was not sufficient for direct entry into skilled work. The Council remanded the case to the administrative law judge, and directed the ALJ to obtain testimony from a vocational expert as to whether Campbell's skills were transferable to other types of work.

On remand, the ALJ heard testimony from Campbell and a vocational expert, who testified that Campbell's skills were transferable to four jobs in the "light" residual functional capacity category. After considering the evidence, the ALJ made findings of fact which included in relevant part:

3. The medical evidence establishes that the claimant has osteoarthritis of both knees and Bipolar Disorder, mixed with psychotic features, but that he does not have an impairment or combination of impairments listed in, or medically equal to one listed in Appendix 1, Subpart P, Regulations No. 4.

4. The claimant's subjective complaints, including pain, appeared exaggerated and out of proportion to the medical findings and, consequently, cannot be accepted as reasonable or accurate.

5. The claimant has the residual functional capacity to perform the physical exertion and nonexertional requirements of work except for work requiring standing or walking over approximately 6 hours of an 8–hour day, work requiring frequent bending or stooping due to his exertional impairments, or any work involving excessive stress due to his nonexertional impairment (20 CFR 404.1545)

6. The claimant is unable to perform his past relevant work as a carpenter in the construction industry.

7. The claimant's residual functional capacity for the full range of light work is reduced by his non-exertional limitations.

. . . . .

12. Although the claimant's additional nonexertional limitations do not allow him to perform the full range of light work, using the above-cited rule as a framework for decision-making, there are a significant number of jobs in the national economy which he could perform. Examples of such jobs are: mobile home park manager, lift truck operator, maintenance man of small commercial buildings, and ground keeper. There are a significant number of these jobs in the national economy.

Based on these facts the administrative law judge concluded that Campbell was not disabled within the meaning of the Social Security Act, 42 U.S.C. § 423(d)(1)(A), and denied the claim for benefits.

The Appeals Council denied appellant's request for review, thereby making the ALJ's December 1983 decision the final decision of the Secretary. Appellant filed suit in the United States District Court for the Western District of Oklahoma, seeking review under § 205(g) of the Social Securi-

ty Act, 42 U.S.C. § 405(g). The district court affirmed the Secretary's decision. Campbell now appeals from the decision of the district court.

## I.

This court's function on review is to determine whether the Secretary's decision is supported by substantial evidence. 42 U.S.C. § 405(g); *Talbot v. Heckler*, 814 F.2d 1456, 1461 (10th Cir.1987). Substantial evidence is more than a scintilla, but less than a preponderance; it is such evidence that a reasonable mind might accept to support the conclusion. *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971).

42 U.S.C. § 423(d)(1)(A) defines disability as, inter alia, the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." The Secretary evaluates disability claims by a five-step process, set out in 20 C.F.R. § 404.1520 (1986). *See Bowen v. Yuckert*, —— U.S. ——, ——, 107 S.Ct. 2287, 2290, 96 L.Ed.2d 119 (1987) (describing the five-step process). If a finding of "disabled" or "not disabled" can be made at any step, further inquiry is not needed.

In this case, the Secretary proceeded through each of the five steps before determining that Campbell was not disabled. Campbell argues that the Secretary erred at steps three and five.

## II.

■ Campbell contends that the ALJ erred at step three in finding that the combination of his impairments did not meet or equal the Listing of Impairments in 20 C.F.R. pt. 404, subpt. P, app. 1 (1986).

When a claimant has one or more severe impairments the Social Security Disability Benefits Reform Act of 1984 requires the Secretary to consider the combined effect of the impairments in making a disability determination. 42 U.S.C. § 423(d)(2)(C).

In this case, the Secretary properly considered the medical evidence and the claimant's testimony. The Secretary found that Campbell had not been able to work since December 1980, and that he had two impairments, osteoarthritis and bi-polar syndrome. The ALJ found that these impairments, alone or in combination, did not meet or equal the Listing of Impairments in appendix 1.

The appellant has not suggested how the combination of impairments might meet the criteria in the appendix. We have carefully reviewed the record and find that the Secretary's finding at step three is supported by substantial evidence.

## III.

Campbell alleges several errors at step five of the Secretary's determination.

### A.

■ Campbell argues that the Secretary erred in changing his initial finding that Campbell retained a residual functional capacity for sedentary work to a finding that he was capable of performing light work.

The Social Security Administration categorizes jobs in terms of the physical exertion required to perform them: sedentary, light, medium, heavy, and very heavy. 20 C.F.R. § 404.1567 (1986). Light work primarily requires "a good deal of walking or standing," or it may involve "sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. § 404.-1657(b) (1986). Light work may demand "lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." *Id.* Sedentary work, on the other hand, involves "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools." 20 C.F.R. § 404.1567(a) (1986). Sedentary work generally involves sitting, although it may require some walking or standing. *Id.*

The Secretary did not err, as appellant contends, by first finding a residual functional capacity of "sedentary" in his No-

vember 22, 1982 decision, and then on remand, changing that finding to a residual functional capacity of "light" following the December 23, 1983 hearing at which Campbell testified. The regulations provide that "[t]he administrative law judge shall take any action that is ordered by the Appeals Council and may take any additional action that is not inconsistent with the Appeals Council's remand order." 20 C.F.R. § 404.-977(b) (1986). The Appeals Council directed the ALJ to obtain testimony from a vocational expert as to the transferability of Campbell's skills to a range of work "within the claimant's residual functional capacity." The ALJ's redetermination of the residual functional capacity was not inconsistent with this order. Nor did the order bind the ALJ to his earlier decision. To hold otherwise would discourage administrative law judges from reviewing the record on remand, checking initial findings of fact, and making corrections, if appropriate. We decline to constrain the ALJ in a manner not mandated by the regulations.

### B.

██ Campbell also charges that the Secretary improperly discounted his testimony that he was unable to work due to the pain in his knees.

The ALJ did not ignore Campbell's allegations of pain; rather, he properly weighed them in light of the medical evidence.[1] The ALJ found that, while there was no doubt that Campbell did have some pain, "his testimony was not wholly credi-

ble or consistent with the medical evidence."

We give great deference to the ALJ's conclusions regarding a claimant's credibility. *Broadbent v. Harris,* 698 F.2d 407, 413 (10th Cir.1983). We may not disturb the ALJ's finding when the appellant's complaints of pain are not supported by the medical evidence in the record. While arthritis is a condition known to produce pain, neither Campbell's treating doctor nor Dr. Moore, his consultative physician, made any specific findings of pain. Furthermore, Campbell stated that he does not take any prescribed medicine for pain, and he takes aspirin only about once a week. We hold that the Secretary's finding discounting Campbell's subjective complaints of pain is supported by substantial evidence.

### C.

Appellant's final argument is that the Secretary has failed to meet his burden of showing that alternative work exists in the national economy that Campbell can perform notwithstanding his exertional and nonexertional impairments. We agree and reverse on this ground.

██ If a claimant cannot return to his or her past work, the Secretary has the burden of producing evidence that the claimant retains the ability to do alternative work and that such work exists in the national economy.[2] 42 U.S.C. § 423(d)(2)(A); *Tal-*

---

1. The Social Security Disability Benefits Reform Act sets out the standard for finding a disability based on pain:

 An individual's statement as to pain or other symptoms shall not alone be conclusive evidence of disability as defined in this section; there must be medical signs and findings, established by medically acceptable clinical or laboratory diagnostic techniques, which show the existence of a medical impairment that ... could be reasonably expected to produce the pain or other symptoms alleged and which, when considered with all evidence required to be furnished under this paragraph (including statements of the individual or his physician as to the intensity and persistence of such pain or other symptoms which may reasonably be accepted as consistent with the medical signs and findings), would lead to a

 conclusion that the individual is under a disability. Objective medical evidence of pain or other symptoms established by medically acceptable clinical or laboratory techniques (for example, deteriorating nerve or muscle tissue) must be considered in reaching a conclusion as to whether the individual is under a disability.
 42 U.S.C. § 423(d)(5)(A).

2. In many cases, the Secretary can make this determination by relying on the Medical-Vocational Guidelines, or "grids," at 20 C.F.R. pt. 404, subpt. P, app. 2. The Secretary first makes findings of fact regarding the claimant's residual functional capacity, age, education and experience, and matches the findings with the applicable rule contained in the grid. If the findings of fact coincide with the criteria contained in

*bot*, 814 F.2d at 1460. In order to satisfy this burden, the Secretary must show that a claimant can perform at least a substantial majority of the jobs in the claimant's residual functional capacity category. *Talbot*, 814 F.2d at 1462 n. 3. In this case, a vocational expert testified that Campbell could perform four jobs in the light work category: mobile home park manager, lift truck operator (fork-lift), maintenance worker for an apartment or small commercial building, and groundskeeper. The Secretary concluded that the availability of these jobs establishes that Campbell is not disabled within the meaning of the Act.

 The Secretary's conclusion is not supported by substantial evidence. Assuming *arguendo* that the four listed jobs qualify as "light" work,[3] two of the four jobs require climbing,[4] and the record shows that the condition of Campbell's right knee limited his ability to use a ladder or climb stairs. The claimant's consultative physician, Dr. Balan, found Campbell had "mild disability for prolonged bending, stooping, lifting, and carrying activities, and going up and down steps and stairs."[5] The Secretary's consultative physicians also ac-

knowledged Campbell's limited ability to do work that involved climbing. Moreover, the vocational expert's responses to the hypothetical questions asked by the ALJ cast serious doubt on Campbell's ability to do the work described by the expert:[6]

Q. If he's unable to climb a ladder, because of the problems that he has with his knees, would that eliminate the maintenance work of an apartment?

A. It definitely would be a severe handicap to him. Because a ladder use [sic] extensively in replacing flourescent lighting, and bulbs, even climbing up on a building where there's a ladder involved, if you had to change air conditioning filters where the units are on top of the building.

Q. If the same thing would be true with respect to the fork lift operator because of the difficulty with the knees, would that pretty well eliminate that job?

A. It pretty well on a sustain [sic] competitive basis, yes.

the rule, a finding of disabled or not disabled is directed. 20 C.F.R. pt. 404, subpt P, app. 2, § 200.00(a). Where exertional limitations prevent the claimant from doing the full range of work specified in his assigned residual functional capacity, or where nonexertional impairments are also present, the grids alone cannot be used to determine the claimant's ability to perform alternative work. *Talbot*, 814 F.2d at 1460. Instead, the grids can be used only as a framework for determining what the claimant can still do in light of his impairments. The ALJ properly used the grids only as a framework in this case.

3. Whether these jobs are actually in the "light" category is questionable. The vocational expert testified the mobile home park manager's job was "sedentary to light" and the maintenance work was "light to medium". He stated no classification for the groundskeeper's job. Lift truck operation was the only job to which he assigned an unequivocal "light" classification.

The regulations provide that the Secretary will take notice of the Dictionary of Occupational Titles, published by the Department of Labor, in determining the appropriate category of a job. *See* 20 C.F.R. § 404.1566(d)(1) (1986). The Dictionary compels conclusions different than those reached by the vocational expert. The Dictionary places groundskeeper, mainte-

nance repair worker, and lift truck operator (designated as "front end loader operator") in the medium category. Mobile home park manager is apparently not a job title catalogued by the Department of Labor. A mobile home lot utility worker is in the heavy category; an apartment or boarding house manager is in the light category. *See* U.S. Dept. of Labor, *Selected Characteristics of Occupations Defined in the Dictionary of Occupational Titles* (1981).

4. A groundskeeper and a maintenance worker require the ability to climb. *See* U.S. Dept. of Labor, *Selected Characteristics of Occupations Defined in the Dictionary of Occupational Titles* (1981).

5. We give special weight to the views of the claimant's physician. *Kemp v. Bowen*, 816 F.2d 1469, 1476 (10th Cir.1987).

6. An administrative law judge may not ask a vocational expert a hypothetical question based on substantial evidence and then ignore unfavorable answers. *See Brownton v. Heckler*, 571 F.Supp. 140, 143 (N.D.Cal.1983); *May v. Harris* [1982 Transfer Binder], Unemp.Ins.Rep. (CCH) § 14,051 (W.D.Mich.1981). The questions asked by the ALJ in this case were based on substantial evidence.

Campbell's nonexertional impairments also affect his ability to perform any of the four jobs identified by the vocational expert. The reports from each of his hospitalizations for psychiatric care provide considerable evidence of his inability to deal with work-related stress. A social worker who evaluated Campbell several days after his 1982 admission concluded that Campbell was "able to be managed on outpatient medication usually without difficulty and is cooperative. However, he became overly stressed in returning to work after an absence of 18 months due to injury, and experienced a recurrence of his illness." Similarly, a report from Campbell's outpatient therapist prepared in June, 1983, further supports a finding that Campbell is unable to deal with work-related stress:

Over the past year Mr. Campbell has either considered or attempted to work twice to my knowledge, and on both of these occasions, his condition did deteriorate. For instance, in and/or around July of 1982, Mr. Campbell did in fact try to return to work. He decompensated to a point to where he was admitted to Central State Hospital with the presenting problems of auditory and visual hallucinations, disorientation and confusion, and agitated and hostile behavior. In and/or around 1/83, Mr. Campbell reported to our doctor that he was considering returning to work to supervise a crew for some house remodeling. In the next week, he reported an increase in his tension level with resulting insomnia. He was stabilized by 3/83.

Furthermore, a residual functional capacity assessment prepared by Dr. Esther Macam, Campbell's treating psychiatrist at the outpatient clinic, assessed Campbell's ability to respond to customary work pressure as "severely impaired." Finally, the vocational expert testified that a person who was severely limited in his ability to respond to customary work pressure would not be able to function efectively and efficiently in any of the four suggested jobs.

■ There is not substantial evidence that Campbell can perform a substantial majority of jobs in the light category. Indeed, the record fails to support a determination that Campbell could actually work in any of the jobs listed by the vocational expert. In these circumstances, we conclude that the Secretary has not met the burden of showing that Campbell was capable of performing the full range of light work. However, this holding does not automatically dictate an award of benefits. The ALJ did not determine whether Campbell was capable of performing sedentary work, the sole classification requiring less physical exertion than light work. We cannot determine from this record whether there are sedentary jobs that Campbell can perform. Therefore, we must remand to the Secretary for a determination of whether there are sedentary jobs available in the national economy that Campbell is able to perform. *See Dollar v. Bowen*, 821 F.2d 530, 534, (10th Cir.1987).

REVERSED AND REMANDED.