Mary Lou **DESCHEENIE**, on Behalf of Harrison **DESCHEENIE**, a minor, Plaintiff–Appellee,

v.

**Otis R. BOWEN, M.D.,** Secretary of Health and Human Services, Defendant–Appellant.

No. 86–2385.

United States Court of Appeals, Tenth Circuit.

June 27, 1988.

Stephen T. LeCuyer of Mettler & LeCuyer, Shiprock, N.M., for plaintiff-appellee.

Stanley Ericsson, Atty. (Richard K. Willard, Asst. Atty. Gen., William L. Lutz,

U.S. Atty., Ronald F. Ross, Asst. U.S. Atty., Donald A. Gonya, Asst. General Counsel, Randolph W. Gaines, Deputy Asst. General Counsel for Litigation, and John M. Sacchetti, Chief, Retirement and Survivors Ins. Litigation Branch, with him on the briefs), U.S. Dept. of Health and Human Services, Baltimore, Md., for defendant-appellant.

Before MOORE, ANDERSON and BRORBY, Circuit Judges.

JOHN P. MOORE, Circuit Judge.

In 1971, Mary Lou Descheenie sought surviving child benefits on behalf of her son, Harrison, under Title II of the Social Security Act, 42 U.S.C. § 402(d)(1). The application was denied. Ms. Descheenie reapplied for benefits in 1981, and on June 9, 1983, after a hearing, the Administrative Law Judge awarded benefits on both the 1971 and 1981 applications. The Appeals Council of the Social Security Administration (Administration) notified Ms. Descheenie of its intention to reopen the decision, questioning the correctness of the ALJ's award of benefits on the 1971 application on the basis of the rules of administrative finality. After reconsideration, the Appeals Council awarded benefits only on the 1981 application. Ms. Descheenie appealed the decision under 42 U.S.C. § 405(g) to the United States District Court for the District of New Mexico. Reversing the Appeals Council, the district court held the record lacked substantial evidence to support the Secretary's finding Ms. Descheenie received written notification of the denial of the 1971 claim. The Secretary now appeals urging the district court misapplied the standard for substantial evidence. We disagree and affirm the order reinstating the decision of the ALJ.

## I.

The Tribal Census Office of the Bureau of Indian Affairs recorded that Harrison Descheenie was born on October 1, 1967, in Shiprock, New Mexico. At the time, Harrison's mother, Mary Lou Descheenie, and Henry James Harris, both members of the

Navajo tribe, were living together on the Navajo reservation. Ms. Descheenie speaks only Navajo. Mr. Harris, the wage earner, died in 1969. Subsequently, Ms. Descheenie filed an application for surviving child benefits in 1971, stating: (1) Harrison was Harris' son; (2) she and Harris lived together from 1966–1968; (3) Harris moved back to his parents' home in 1968 since his mother refused to recognize the marriage; (4) no ceremonial or Navajo marriage was performed; and (5) although no papers show Harris recognized the child as his, he bought clothes to help support the child. To evaluate the application, the claims representative for the Administration applied New Mexico law which does not recognize common-law marriage. The representative found insufficient evidence to show Harrison the natural child of Harris because of the absence of both a marriage ceremony "for a deemed marriage, step-relationship or legitimated child purposes," and a written acknowledgment of paternity for inheritance purposes or to deem an illegitimate child eligible for benefit purposes. The claim was denied. Ms. Descheenie did not appeal the decision.

In 1981, Ms. Descheenie reapplied for benefits and was again turned down. This time, however, Ms. Descheenie, represented by counsel, sought reconsideration of the decision. After another adverse decision, Ms. Descheenie requested a hearing. The ALJ instructed the legal issues "clearly before us today ... [are] the relationship and the fact of the birth of the child and where they cohabited." Assisted by an interpreter, Ms. Descheenie explained she had lived with Harris exclusively for about 2½ years in a trailer beside Harris' mother's house; that Harris' mother disapproved of their marriage but called her "daughter," and treated the boy as "family"; and that although Harris listed his son as "Alvin" on an employment application, he later agreed to call him Harrison. Ascertaining that no other parties were currently drawing any benefits on the wage earner's account, the ALJ permitted Ms. Descheenie's counsel to submit additional exhibits after the hearing.[1]

On the basis of this evidence,[2] the ALJ concluded, "Harrison Descheenie is the legitimate 'child' of the wage earner under the law of the Navajo Nation and is entitled to inherit personal property from the wage-earner under New Mexico intestacy law." Thus, Harrison is a "child" within the meaning of Social Security Act § 216(h)(2)(A).[3] The ALJ awarded benefits pursuant to the applications of June 3, 1971, and August 3, 1981.

Ms. Descheenie received a Social Security Award Certificate detailing the payment schedule on the 1981 application and raising a question about the benefits awarded on the 1971 application.[4] Subsequently, the Appeals Council notified Ms. Descheenie that it had reopened the decision under

1. The exhibits received after the hearing were two letters with attachments from Ms. Descheenie's counsel.

2. The ALJ also considered statements from the deceased wage earner's uncle, aunt, sister, and cousin, several reports of contact, letters from the Administration, a death certificate, and copy of an announcement card from the PHS Indian Hospital, Shiprock, New Mexico.

3. Section 216(h)(2)(A), now codified at 42 U.S.C. § 416(h)(2)(A), states:
   In determining whether an applicant is the child or parent of a fully or currently insured individual for purposes of this subchapter, the Secretary shall apply such law as would be applied in determining the devolution of intestate personal property by the courts of the State in which such insured individual is domiciled at the time such applicant files application, or, if such insured individual is dead, by the courts of the State in which he was domiciled at the time of his death, or, if such insured individual is or was not so domiciled in any State, by the courts of the District of Columbia. Applicants who according to such law would have the same status relative to taking intestate personal property as a child or parent shall be deemed such.

4. The Administration wrote, "A question has arisen as to whether we may reopen the claim of June 3, 1971. We may only pay based on the application of August 3, 1981 at this time. You will be notified later as to the decision on the reopening."

20 C.F.R. §§ 404.988(b) [5] and 404.989(a)(3) [6] because of an error apparent on the face of the decision of the ALJ. The Appeals Council stated that it planned to find entitlement under the 1981 application only because under 20 C.F.R. § 404.905 the July 1971 notice of denial for which there was no request for reconsideration was a final and binding decision which could not be reopened under §§ 404.987, 404.988, and 404.989. To reach this conclusion, the Appeals Council relied on a memorandum from the Mid–America Program Service Center dated August 4, 1983,[7] and a memorandum from the Office of Insurance Programs dated September 6, 1983.[8] This letter was followed by a decision of the Appeals Council dated March 12, 1984, confining the benefits award to the 1981 application.

Ms. Descheenie then filed this suit in the district court for judicial review of the Appeals Council decision. Without addressing either the jurisdictional issues raised or an alleged due process claim, the district court held the Appeals Council's finding that a decision was rendered on the 1971 application prior to the 1983 decision was not supported by substantial evidence. The court rejected the Appeals Council's reliance on (1) the internal determination recommending denial of benefits approved July 19, 1971; and (2) the memorandum dated September 6, 1983, from the Acting Associate Commissioner for Retirement and Survivors Insurance to the Associate Commissioner for Hearings and Appeals, stating, "although the notice of this initial determination is not in the file, evidence indicates it was dated July 22, 1971." The

referenced "evidence," the court underlined, was not before it. "Assumptions and inferences alone are not substantial evidence," the court concluded, citing *Atteberry v. Finch*, 424 F.2d 36 (10th Cir.1970).

## II.

The single question raised by the Secretary in this appeal is whether the district court misapplied the substantial evidence standard when it failed to affirm the decision of the Appeals Council. The Secretary reminds us that "substantial evidence" is a term of art describing a standard that "goes to the reasonableness of what the agency did *on the basis of the evidence before it....*" *United States v. Carlo Bianchi & Co.*, 373 U.S. 709, 715, 83 S.Ct. 1409, 1414, 10 L.Ed.2d 652 (1963).

We agree that our focus on appeal is narrow. Congress delineated judicial review by stating, "The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive...." 42 U.S.C. § 405(g). As we have reiterated, substantial evidence is "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971), and means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Broadbent v. Harris*, 698 F.2d 407, 414 (10th Cir.1983). In our review, "[w]e neither weigh the evidence nor substitute our discretion for that of the agency." *Kemp v. Bowen*, 816 F.2d 1469, 1475 (10th Cir.1987) (citing *Cagle v. Califano*, 638 F.2d 219 (10th Cir.1981)). "Nevertheless, the evidence must have some substance to it."

**5.** 20 C.F.R. § 404.988(b) permits the Secretary to reopen a decision "[w]ithin four years of the date of the notice of the initial determination if we find good cause, as defined in § 404.989, to reopen the case; ..."

**6.** Section 404.989(a)(3) states: "We will find that there is good cause to reopen a determination or decision if ... (3) The evidence that was considered in making the determination or decision clearly shows on its face that an error was made."

**7.** In this memorandum, the Director of MAMPSC stated that he believed the 1971 deci-

sion was final but noted that the ALJ did not provide his reasoning for reopening. The Director also noted the Administration's change of position in 1981 prompted by a Regional Attorney's decision that the Navajo Nation's recognition of common-law marriages would be recognized by the State of New Mexico. However, this change would be effective only for claims adjudicated on or after April 10, 1981.

**8.** This memorandum stated the ALJ erred in reopening the initial determination of 1971, adding, "Although the notice of this initial determination is not in the file, evidence indicates it was dated July 22, 1971."

*Jozefowicz v. Heckler,* 811 F.2d 1352, 1357 (10th Cir.1987). "Evidence is not substantial if it is overwhelmed by other evidence . . . or if it really constitutes not evidence but mere conclusion." *Williams v. Bowen,* 844 F.2d 748, 750 (10th Cir.1988) (citations omitted).

The Appeals Council reopened the decision of the ALJ because of an error apparent on the face of the decision. 20 C.F.R. §§ 404.988(b) and 404.989(a)(3).[9] The Appeals Council believed the ALJ lacked authority to reopen the 1971 application based on two internal memoranda indicating the Administration's assumption the 1971 decision was final and binding. This assumption led the Secretary to believe the denial was legally effective and too remote in time to be reviewed. As the Secretary concedes, however, when more than one application is filed, the initial date of entitlement turns on whether the earlier application has been denied and whether that denial is legally effective.

■ The district court found the Appeals Council relied on hearsay statements that there was "evidence" the denial was dated July 22, 1971. Aside from this hearsay, there is no other evidence. Hearsay evidence is "presumptively unreliable," *Ohio v. Roberts,* 448 U.S. 56, 66, 100 S.Ct. 2531, 2539, 65 L.Ed.2d 597 (1980), and forms a particularly faulty basis for the fact finder to establish trustworthiness. *See United States v. Carrigan,* 804 F.2d 599, 606 (10th Cir.1986) (Moore, J. dissenting).

■ The Secretary urges Ms. Descheenie's ten years of silence,[10] the absence of conflicting "evidence" as to the matter asserted in the hearsay document, and the presumption of administrative regularity are sufficient to establish the "evidence" of the 1971 denial. As we stated in *Atteberry v. Finch,* 424 F.2d at 39, to accept these arguments would permit the Secretary to supply evidence on the critical issue of notification after the commencement of court action. "In this case the existence of statutory notice would be established without any actual proof thereof. We think this is contrary to orderly court review procedure in such cases."

While the Secretary attempts to supply a copy of the notice of denial in his reply brief and argues that its absence in the record stems from the belief that the question of notice was not previously raised, we cannot accept these disingenuous assertions. The very advice on which the Appeals Council operated was that of its internal components suggesting the existence of final notice triggering the rules of administrative finality on which the Secretary relied.

■ Alternatively, the Secretary argues the district court erred in concluding that reversal is required when a decision is not supported by substantial evidence. The Secretary contends the rule of harmless error should apply unless the claimant can show prejudice resulted from the decision. *Palmer v. Hoffman,* 318 U.S. 109, 116, 63 S.Ct. 477, 481, 87 L.Ed. 645 (1943). *Palmer* is inapposite.[11] The Secretary's determination the 1971 decision was final shaped the outcome of its decision. As such, it can hardly be characterized as harmless error. "A decision not supported by substantial evidence must be reversed." *Williams v. Bowen,* 844 F.2d at 750. Moreover, "[O]utright reversal and remand for immediate award of benefits is appropriate when additional fact finding would serve no useful

9. We are satisfied the cited regulations permit reopening in this case. *See Fox v. Bowen,* 835 F.2d 1159 (6th Cir.1987).

10. The Secretary ignores Ms. Descheenie's language barrier insofar as this fact relates to the question of notice. Although the Secretary suggests several inferences in his favor to establish notice, Ms. Descheenie's affidavit, stating she had looked through her papers and could not find or remember what happened with the 1971

application, provides a controverting inference that we cannot overlook.

11. *Palmer,* a negligence action, affirmed the inadmissibility of the railroad engineer's accident report and declined to reverse on a second evidentiary issue for the stated reason, "Mere 'technical errors' which do not 'affect the substantial rights of the parties' are not to set aside a jury verdict in an appellate court." *Id.* 318 U.S. at 116, 63 S.Ct. at 482 (citations omitted).

purpose." *Dollar v. Bowen*, 821 F.2d 530, 534 (10th Cir.1987).

The Secretary urges it is not good policy to make the public pay for ten additional years of benefits because of a simple administrative error. Our decision, however, is not based on policy but an application of the law and the Secretary's own regulations. *See Asher v. Bowen*, 837 F.2d 825 (8th Cir.1988).

AFFIRMED.

ANDERSON, J., dissents in this opinion.