**Jerry STRATTON, Plaintiff,**

v.

**Louis W. SULLIVAN, M.D., Secretary of Health and Human Services, Defendant.**

**No. CIV–90–1149–W.**

United States District Court, W.D. Oklahoma.

Feb. 28, 1991.

Margie K. Balentine, Balentine & Balentine, Yukon, Okl., for plaintiff.

Timothy D. Leonard, U.S. Atty. and M. Kent Anderson, Asst. U.S. Atty., Oklahoma City, Okl., for defendant.

## MEMORANDUM OPINION

LEE R. WEST, District Judge.

Plaintiff brought this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the defendant Secretary of Health and Human Services ("the Secretary") denying his application for a period of disability and disability insurance benefits, 42 U.S.C. §§ 416(i) and 423, and for supplemental security income benefits, 42 U.S.C. § 1381a.

Plaintiff's application for disability benefits was filed April 1, 1987, alleging disability since May 15, 1974, due to a back injury (Tr. 162–165).[1] Contemporaneously with the application for disability benefits, plaintiff filed an application for supplemental security income (Tr. 166–179). The applications were denied on June 11, 1987 (Tr. 180–192). Plaintiff's request for administrative reconsideration of his applications was denied on August 11, 1987 (Tr. 195–207).

On October 15, 1987, plaintiff requested a hearing before an Administrative Law Judge ("the ALJ") (Tr. 208). Pursuant to the request, a hearing was held April 29, 1988 (Tr. 40–80). By decision dated August 29, 1988, the ALJ denied plaintiff's applications (Tr. 25–32). By order dated January 25, 1989, the Appeals Council vacated the ALJ's April 29, 1988 decision and remanded the matter back to the ALJ to re-evaluate plaintiff's pain complaints in accordance with Social Security ruling 88–13 (Tr. 22). Furthermore, because the ALJ had not specifically acknowledged the shifting burden of proof at step 5 of the sequential evaluation process, the Appeals Council directed the ALJ to acknowledge the shift, if necessary, in a subsequent hearing (Tr. 22).

A subsequent hearing was held on April 26, 1989 (Tr. 81–133). By decision dated August 8, 1989, the ALJ denied plaintiff's applications, finding that plaintiff was not under a disability as defined in the Social Security Act (Tr. 9–16). The Appeals Council, by decision dated June 26, 1990, declined to review the ALJ's decision (Tr. 5–6). Accordingly, the ALJ's decision became the final decision of the Secretary.

The evidence and testimony presented at the two hearings established the following facts.

Plaintiff was born April 24, 1946, making him 40 years of age at the time the applications now under review were filed (Tr. 43, 162). Plaintiff graduated from high school and completed 936 hours of machinist's school (Tr. 85, 44). Plaintiff has not engaged in substantial gainful activity since May 15, 1974 (Tr. 45, 162).

At the April 29, 1988 hearing, plaintiff testified that he lives with his girlfriend in Maysville, Oklahoma (Tr. 43). He is unable to work due to back, leg, and neck pain present since back surgeries in 1973 and 1974 (Tr. 46–48). Plaintiff underwent surgery because of injuries sustained in a 1973 automobile accident (Tr. 55). Plaintiff testified that he has had past drug and alcohol abuse problems, but no longer uses either drugs or alcohol (Tr. 53–54).

Plaintiff's only past relevant work plaintiff is that of machinist (Tr. 49). While working as a machinist, he was frequently required to lift between 75–100 pounds and to bend and stoop frequently (Tr. 49). Plaintiff has not worked as a machinist since 1973 (Tr. 48). He has attempted other jobs, such as road work, but is unable to perform them due to the necessity of taking frequent rest breaks (Tr. 45–46). Approximately three weeks prior to this hearing, plaintiff had attempted to work at a road construction job, but was able to work only ten or eleven days during a three week period (Tr. 45).

Plaintiff testified that he was not currently under a doctor's care or treatment

---

1. Plaintiff filed previous applications for disability benefits, all of which were administratively denied (Tr. 134–158). Plaintiff did not pursue further administrative remedies after the denials. The prior decisions are therefore final, the

Secretary's decision on the prior applications is not before the Court, and the Court is without jurisdiction to consider the Secretary's previous decisions. *See, Brown v. Sullivan,* 912 F.2d 1194, 1196 (10th Cir.1990).

(Tr. 57). The last doctor he saw told him that surgery might or might not provide relief, and therefore he elected not to have further surgery (Tr. 57). He is able to sit for 30–60 minutes before he needs to stand up and walk around (Tr. 62). Plaintiff testified he is able to walk approximately 3–5 blocks per day (Tr. 62–63). He has been off pain medication for several years, relying solely on hot baths to relieve his pain (Tr. 64).

No testimony was given during the 1988 or 1989 hearings detailing anything other than cursory attempts by plaintiff to find relief for his pain (Tr. 42–66).

A vocational expert testified at the 1988 hearing that plaintiff had acquired such skills as blueprint reading, using hand tools, using precision measuring equipment, setting up and operating mills, drill presses, boring machines, and performing close tolerance work (Tr. 68). These skills were transferable to several sedentary jobs, such as grinding, abrading, buffing and polishing machine operators (Tr. 68). Thirty-one hundred such positions, in the light job category, are available in Oklahoma and 292,551 within the national economy (Tr. 69).

At the 1989 hearing, plaintiff testified that following his 1973 car accident he underwent two surgeries to his back (Tr. 87). Following the surgeries, plaintiff received Social Security disability benefits until 1980 (Tr. 88). Plaintiff again testified that he was unable to take pain medication because of his previous dependency and abuse of pain medication (Tr. 89–90).

Plaintiff also testified that he is able to walk up to four blocks (Tr. 93), can stand for 5–7 minutes before his leg begins to hurt (Tr. 93), and can remain seated for 15–20 minutes before he begins to have back pain (Tr. 94). Because of his pain, he sits for approximately 15–20 minutes at a time and then gets up and moves to a different position (Tr. 94). Plaintiff also testified that he occasionally lifts 20 pounds, as he purchases potatoes in 20–pound bags and lifts them from his car to his porch (Tr. 96). He also testified that he is able to lift ten pounds (Tr. 96).

Plaintiff further testified during the 1989 hearing that the only doctor he had been to recently was for the purpose of obtaining eyeglasses (Tr. 99). He testified that although he is able to visit the Carl Albert Indian Hospital at no charge, he has been told by them that medication is the only thing available to him to relieve his pain (Tr. 99). He testified that he does not want to undergo additional surgery, as his two previous surgeries have been unsuccessful (Tr. 99). Plaintiff testified that he was unwilling to undergo a third surgery because doctors were unwilling to sign an affidavit stating that the third surgery would be successful (Tr. 99–100).

Plaintiff testified that the last time he had been to see a doctor on his own accord concerning his back was sometime in 1982 or 1983 (Tr. 107–108). He has seen physicians at the Indian Hospital and Oklahoma Memorial Hospital concerning his back pain, but these visits were pursuant to requests by the Social Security Administration (Tr. 108). Upon further questioning by the ALJ concerning plaintiff's lack of visits to physicians, plaintiff testified that he did not have "confidence in doctors, dentists, lawyers, or politicians" (Tr. 109).

A vocational expert was also called to testify at the 1989 hearing (Tr. 111–133). The vocational expert testified that plaintiff did not acquire transferable skills from his machinist jobs which would be transferable to sedentary or light work jobs that do not require repetitive bending or stooping (Tr. 112). However, the expert testified that there were some sedentary jobs which would allow the worker to change positions approximately every thirty minutes which plaintiff was capable of performing (Tr. 113). Such jobs include ticket sellers (Tr. 113), telephone order takers (Tr. 114), and cashiers (Tr. 115), all of which occur in significant numbers in the regional and national economies. The expert testified that 3,150 jobs of ticket seller, which are classified to include those at amusement parks, are available in Oklahoma (Tr. 113). He also testified that there are 2,500 order clerk and 10,000 cashier positions available

in Oklahoma which plaintiff is capable of performing (Tr. 114–15).

The ALJ's decision, issued August 8, 1989, found that plaintiff was incapable of performing his past relevant work (Finding No. 6, Tr. 15); that plaintiff's residual functional capacity was limited by his need to alternate between sitting and standing approximately every thirty minutes (Finding No. 7, Tr. 15); that plaintiff had acquired no skills transferable to positions which he is now able to perform (Finding No. 10, Tr. 16); and that plaintiff is capable of performing a wide range of sedentary work even though he needs to alternate between sitting and standing every thirty minutes (Tr. 14).

The medical portion of the record contains a January 17, 1983, letter by Dr. Howard Young Sigler, of Dallas, who wrote that he diagnosed plaintiff as suffering from two surgical procedures to his back resulting in stiffness and weakness, and nerve root irritation causing severe cramping of the muscles of his left leg with resulting left leg weakness (Tr. 250). Dr. Sigler opined that, by taking into consideration plaintiff's physical condition, age and education, plaintiff was permanently and totally disabled and that no further improvement could be anticipated. This letter is the only record of Dr. Sigler's contained in the record.

A record of Lakeside Hospital in Kansas City, Missouri, reported that plaintiff entered the hospital on July 31, 1973, with acute lumbosacral strain, instability, and acute anxiety (Tr. 252). The report indicates that plaintiff was hardly able to bend, straighten up, or move without severe pain (Tr. 252). Dr. T.E. Johnston recommended conservative management in the form of traction, physical therapy, and a lumbosacral garment to correct plaintiff's condition (Tr. 256).

On August 9, 1973, plaintiff underwent a bilateral posterior lateral fusion at Lakeside Hospital (Tr. 259). There are no records indicating plaintiff's post-operative condition, treatment, or prognosis.

A letter of Dr. Otis Motes, a chiropractor, dated February 15, 1984, reported that x-rays of plaintiff revealed him to have osteoarthritis complicated by a 1974 spinal fusion (Tr. 267). The letter indicated that Dr. Motes did not accept plaintiff as a patient (Tr. 267). The letter is the only record from Dr. Motes.

Plaintiff returned to Lakeside Hospital in early 1974 for reevaluation of the spinal fusion performed there on August 9, 1973 (Tr. 269). Plaintiff continued to complain of low back pain, pain in his left knee, and of severe leg cramps (Tr. 269). On January 11, 1974, plaintiff underwent a complete laminectomy of the lowest lumbar vertebrae (Tr. 272). Again, there are no records from the hospital concerning plaintiff's post-operative condition, treatment, or prognosis.

On January 23, 1984, plaintiff was seen by Dr. Jack Beller, an orthopedic surgeon (Tr. 275). Plaintiff complained to Dr. Beller that he had attained no improvement in his condition following his laminectomy (Tr. 275). He indicated to Dr. beller that he intermittently wore a back brace (Tr. 275). Dr. Beller noted that x-rays brought to his office by plaintiff revealed a first degree spondylolisthesis of L5 on S1 with an L4–S1 lateral fusion and a total laminectomy of L5 (Tr. 275). Dr. Beller reported that he recommended plaintiff be placed in a back brace full-time, but that plaintiff declined to do so, desiring a more affirmative course of treatment (Tr. 275).

An April 20, 1984, examination of plaintiff was conducted by Charles Howard, M.D. (Tr. 276–277). Dr. Howard reported plaintiff suffered from low back pain with severe limitation, was unable to do moderate labor, but was capable of doing sedentary labor (Tr. 277).

Plaintiff underwent a lumbar myelogram on July 26, 1984, at Baptist Medical Center (Tr. 278–280). The myelogram found a bulging of the annulus pulposus at the L3–L4, L4–L5 levels, and some irregularity and asymmetry especially at the L4–L5 level, but also at the L3–L4 level (Tr. 280). This is the only record from Baptist Medical Center. It contains no treatment record, recommendations, or prognosis.

A March 26, 1985, letter of Dr. J.D. McGovern reports that plaintiff suffers from spondylolisthesis post-operative fusion and laminectomy (Tr. 281–283). Dr. McGovern's examination, conducted at the request of the State of Oklahoma's Disability Determination Services, noted several contradictions between plaintiff's complaints and his activities (Tr. 282). Dr. McGovern reported that plaintiff's heel-and-toe walking tests were normal, but that the strength of the dorsiflexion and great toe were normal on the right and on the left it was seemingly weak (Tr. 282). The dorsiinversion of the left foot seemed to be weak as well (Tr. 282). Both results conflict with normal heel-and-toe walking (Tr. 282). Plaintiff's calf measurements were the same right and left, leaving some doubt in Dr. McGovern's mind that plaintiff's left foot strength was abnormal (Tr. 282). Plaintiff's left ankle jerk was "seemingly" missing, while the right ankle jerk was normal (Tr. 282). Dr. McGovern also noted that plaintiff had first refused to lie on his back, but later did so while performing a straight-leg raising test (Tr. 282). The straight-leg raising test was bilaterally painful at about 45°; however, plaintiff immediately pulled himself up to a sitting position on the table with his knees only slightly bent and his left hand coming to within ten inches of his toes (Tr. 282). Dr. McGovern reported that he therefore believed plaintiff was exaggerating his pain complaints (Tr. 282).

Also at the request of the Secretary, Dr. Alan R. Brajer examined plaintiff on May 27, 1987 (Tr. 289–292). Dr. Brajer's report indicates plaintiff suffers from chronic low back pain, but the report goes no further in evaluating the pain complaints or plaintiff's physical or exertional limitations (Tr. 290).

Plaintiff's only argument on appeal to this Court is that the Secretary erred at Step 5 of the sequential evaluation process. Plaintiff argues that the Secretary must show that plaintiff is capable of performing a substantial majority of the jobs in the claimant's residual functional capacity category. *Plaintiff's Brief* at 8. Because the Secretary merely identified three jobs within the unskilled sedentary category, out of a total of more than 200 possible jobs, plaintiff argues that the Secretary has failed to meet his burden. *Id.* In support of his argument, plaintiff cites *Campbell v. Bowen*, 822 F.2d 1518 (10th Cir.1987).

In reviewing a decision of the Secretary, this Court is limited to a determination of whether or not the decision is supported by substantial evidence. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971); *Brown v. Bowen*, 801 F.2d 361, 362 (10th Cir.1986). Substantial evidence is defined as more than a scintilla and is such evidence as a reasonable mind might deem adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. at 401, 91 S.Ct. at 1427; *Fowler v. Bowen*, 876 F.2d 1451, 1453 (10th Cir.1989); *Brown v. Bowen*, 801 F.2d at 362. The Court is not to weigh the evidence nor substitute its discretion for that of the Secretary. *Descheenie v. Bowen*, 850 F.2d 624, 627 (10th Cir.1988). Nevertheless, the evidence must have some substance to it. *Id.* Evidence is not substantial if it is overwhelmed by other evidence or if it really constitutes a mere conclusion rather than evidence. *Id.* However, if the evidence is such as to present varying inferences, in order for the Court to disturb the ALJ's findings, the Court would have to engage in factfinding, which it should not do. *Tillery v. Schweiker*, 713 F.2d 601, 603 (10th Cir.1983).

In *Campbell*, the court indeed held that the Secretary must show that a claimant can perform at least a substantial majority of the jobs in the claimant's residual functional capacity category. 822 F.2d at 1523. However, in that case the Secretary had identified four light jobs he believed the claimant could perform. The court, after reviewing the entire record, found that it was clear the claimant was incapable of performing two of the four jobs, and the court had serious doubts whether the claimant could perform either of the two remaining jobs. Thus, there was not substantial evidence to show that the claimant could perform *any* job. *Id.* at 1524. The court remanded the case for determination of whether there were sedentary jobs in

the national economy that the claimant could perform. *Id.*

This Court believes plaintiff's reliance on *Campbell* is misplaced. Certainly *Campbell* cannot be read to require the Secretary to enumerate each possible job that plaintiff is capable of performing in such numbers to equal a substantial majority of the total jobs available within a certain residual functional capacity category. To do so would be to require vocational expert testimony for hours on end. In the instant case, the vocational expert would have been required to identify substantially more than 100 positions he believed plaintiff could perform.

The Secretary's regulations merely require him to demonstrate that there is another job that plaintiff can perform, and that the job comprises a significant number of positions either in the region or in the national economy. 20 C.F.R. §§ 404.1561 and 416.961. Other courts have held that a substantial number of jobs exists even when there are less than 1,000 positions in the region in which the claimant lives. *See, Barker v. Secretary of Health & Human Services,* 882 F.2d 1474, 1478, n. 2 (9th Cir.1989); *Salazar v. Califano,* Unemp. Ins. Rep. (CCH) ¶ 15,835 (E.D.Cal.1978); *Jenkins v. Bowen,* 861 F.2d 1083, 1087 (8th Cir.1988); and *Hall v. Bowen,* 837 F.2d 272, 275 (6th Cir.1988).

In the instant case, the burden of proof shifted to the Secretary after the ALJ determined that plaintiff could no longer perform his past relevant work and that plaintiff acquired no skills transferable to jobs within his residual functional capacity (Tr. 15–16). The Secretary met the burden when the vocational expert testified that there were over 10,000 unskilled sedentary jobs available in the region which plaintiff was capable of performing (Tr. 112–115). Although the expert named only three such jobs by title, his testimony is nevertheless substantial evidence that a significant number of unskilled sedentary jobs exists in this region which plaintiff is capable of performing. Therefore, plaintiff's sole argument to this court is without merit.

Plaintiff has not specifically complained to this Court that his degree of pain precludes him from performing any type of work; however, assuming that plaintiff's argument necessarily contains such an assertion, the Court has reviewed the entire record, and evaluated plaintiff's pain complaints in context with the medical records and objective medical evidence pursuant to the standards set forth in *Luna v. Bowen,* 834 F.2d 161 (10th Cir.1987) and *Williams v. Bowen,* 844 F.2d 748, 753 (10th Cir.1988). The Court finds that the Secretary's decision holding that plaintiff's pain is not of such degree to preclude him from all work is supported by substantial evidence.

Plaintiff's own testimony was that he has not sought medical treatment on his own accord for back pain since the early 1980's (Tr. 107–108). When a physician recommended that plaintiff wear a back brace full-time, plaintiff declined to do so, asserting that he desired more affirmative treatment (Tr. 275). However, plaintiff declines to have additional surgery because physicians cannot guarantee relief (Tr. 99–100, 109). Thus, plaintiff's own testimony is inconsistent with his medical records.

Great deference must be given to the ALJ's conclusions regarding a claimant's credibility. *Campbell,* 822 F.2d at 1522, citing *Broadbent v. Harris,* 698 F.2d 407, 413 (10th Cir.1983). This court will not disturb the ALJ's findings concerning plaintiff's pain when the complaints of pain are not supported by medical evidence in the record. *Campbell,* 822 F.2d at 1522.

The Court finds that the Secretary has shown that plaintiff was not under a disability as defined by the Social Security Act, and that there is substantial evidence to support the Secretary's decision. Therefore, the Secretary's decision must be, and hereby is, affirmed.

IT IS SO ORDERED.