**Mary E. EVANS, Plaintiff–Appellant,**

v.

**Shirley E. CHATER, Commissioner of Social Security,* Defendant–Appellee.**

**No. 94–5163.**

United States Court of Appeals, Tenth Circuit.

May 19, 1995.

---

* Effective March 31, 1995, the functions of the Secretary of Health and Human Services in social security cases were transferred to the Commissioner of Social Security. P.L. No. 103–296. Pursuant to Fed.R.App.P. 43(c), Shirley S. Chater, Commissioner of Social Security, is substituted for Donna E. Shalala, Secretary of Health and Human Services, as the defendant in this action. Although we have substituted the Commissioner for the Secretary in the caption, in the text we continue to refer to the Secretary because she was the appropriate party at the time of the underlying decision.

Paul F. McTighe, Jr., Tulsa, OK, for plaintiff-appellant.

Stephen C. Lewis, U.S. Atty., Tulsa, OK, Gayla Fuller, Chief Counsel, Region VI, Christopher Carillo, Lead Atty., Office of Gen. Counsel, U.S. Dept. of H.H.S., Dallas, TX, for defendant-appellee.

Before HENRY, McKAY, and LOGAN, Circuit Judges.

LOGAN, Circuit Judge.

Plaintiff Mary E. Evans appeals from a district court order affirming the Secretary's decision to deny her application for social security benefits. The Secretary determined that despite severe pain in plaintiff's hands, shoulders, back, neck, and hip, which restricts her residual functional capacity (RFC) for light and sedentary work, plaintiff can perform certain assembly, order clerk, and cashier jobs identified by a vocational expert. Accordingly, the Secretary denied benefits at step five of the controlling sequential analysis. *See generally Williams v. Bowen,* 844 F.2d 748, 750–52 (10th Cir. 1988) (detailing five-step analysis set out in 20 C.F.R. §§ 494.1520 & 416.920). We closely examine the record as a whole to determine whether the Secretary's decision is supported by substantial evidence and adheres to applicable legal standards. *Washington v. Shalala,* 37 F.3d 1437, 1439 (10th Cir.1994). Although the rest of the issues raised on this appeal are meritless, we reverse and remand for further consideration of one critical point inadequately addressed thus far by the Secretary.[1]

Plaintiff's primary, medically demonstrated complaint involves bilateral carpal tunnel syndrome, which prompted surgery on her right wrist in December 1985. The subsequent medical and vocational-rehabilita-tive documentation reflects the consistent judgment that plaintiff could not, or at least should not, perform work requiring strength, fine dexterity, and/or repetitive movements that would place stress on her wrists. *See, e.g.,* R. Vol. II at 85, 98, 103, 106, 148–49, 153–54, 157–59, 169, 181.

Plaintiff initially applied for benefits in late 1986. Her application was denied administratively, although with a clear acknowledgment of the impaired function of her hands:

The medical evidence shows that you first sought treatment for symptoms of carpal tunnel syndrome in November, 1985. You underwent surgery on your right wrist on December 9, 1985. You healed well from the surgery, but developed recurring symptoms as you tried to return to work. Evidence from June, 1986, showed that at that time you were limited in the use of your hands for delicate, repetitive tasks. You still have reduced grip strength and would have problems with tasks requiring dexterity and repetitive movements which would put stress on your wrists. We have determined that your condition has responded to treatment and that even though your condition may prevent you from doing some types of work, it does not prevent you from doing less demanding work.

*Id.* at 101. After requesting review by an Administrative Law Judge (ALJ), plaintiff and her counsel dismissed the proceeding for some unexplained reason.

Plaintiff filed the present application for benefits in March 1991. She was sent to Dr. Wesley Ingram for a consultative examination to update the medical record. Ingram's assessment of a "mild" carpal tunnel condition supporting "a very mild case for disability," *id.* at 194, is the only recent evidence pertinent to the issue. Following receipt of Ingram's report, the Department of Health and Human Services issued a second administrative decision denying benefits, although again with some acknowledgment of the functional impairment in plaintiff's hands. *See id.* at 115 (finding plaintiff could use her

---

1. After examining the briefs and appellate record, this panel has determined unanimously to grant the parties' request for a decision on the briefs without oral argument. *See* Fed.R.App.P. 34(f) and 10th Cir.R. 34.1.9. The case is therefore ordered submitted without oral argument.

hands "well enough" for "most types of activity"). This time plaintiff pursued her case pro se before the ALJ and the Appeals Council.

In light of the facts summarized above, the record developed thus far cannot support a finding that plaintiff's hands are fully functional—although it remains for the administrative tribunal, rather than this appellate court, to determine the factual extent of the impairment. Consequently, the ALJ's failure to include in his hypothetical inquiry to the vocational expert *any* limitation in this regard [2] violated the established rule that such inquiries must include all (and only) those impairments borne out by the evidentiary record. *See Gay v. Sullivan,* 986 F.2d 1336, 1340–41 (10th Cir.1993) (following *Hargis v. Sullivan,* 945 F.2d 1482, 1492 (10th Cir.1991), and *Talley v. Sullivan,* 908 F.2d 585, 588 (10th Cir.1990)). This omission is particularly significant given the expert's later indication that, assuming plaintiff's physical complaints were fully credible, the sedentary assembly, order clerk, and cashier jobs the expert had identified for step-five purposes would not be available to plaintiff, because "most sedentary jobs would require [plaintiff] to use her hands on a continuous basis." R. Vol. II at 51.

Accordingly, this case must be remanded for additional proceedings, including further development of the record regarding the functional component of plaintiff's carpal tunnel condition. We do not intend here to rule out the possibility that additional, substantial evidence could ultimately demonstrate that the degree of impairment involved is either medically de minimis or vocationally inconsequential. On the present record, however, no such finding is sustainable.

■ There is one additional matter which, although not essential to our disposition, warrants published clarification to put to rest a meritless argument that has begun to recur with some frequency in this circuit's social security appeals. Plaintiff's counsel in particular has repeatedly fastened onto a single, isolated passage from *Campbell v. Bowen,* 822 F.2d 1518 (10th Cir.1987), to argue that to deny benefits at step five the Secretary must show the claimant can perform a substantial majority of the occupations in her RFC—not just one or more occupations with a significant number of available positions. This argument reflects a basic confusion between a prerequisite for conclusive reliance on the Secretary's generalized medical-vocational guidelines (grids), and the more particularized proof required, typically through expert opinion, when, precisely because that prerequisite cannot be satisfied, the grids do not control the disposition.

The grids offer a short-cut method for resolving disability questions whenever the claimant can perform a substantial majority of the work in the designated RFC category. *See, e.g., Ragland v. Shalala,* 992 F.2d 1056, 1058 (10th Cir.1993); *Talbot v. Heckler,* 814 F.2d 1456, 1462 n. 3 (10th Cir.1987). When that fundamental factual predicate is not borne out by the evidence, the Secretary must instead identify, and establish the claimant's ability to perform, some specific occupation(s) which—however few in themselves—encompass a significant number of available jobs. *See* 20 C.F.R. § 404.1566(b) ("Work exists in the national economy [for step-five purposes] when there is a *significant number of jobs* (in *one or more occupations* ) having requirements which [the claimant is] able to meet...." (emphasis added)); *see, e.g., Trimiar v. Sullivan,* 966 F.2d 1326, 1330 & n. 10 (10th Cir.1992) (focusing, in step-five affirmance, on number of jobs rather than three occupations involved). Thus, the grids impose a heightened threshold requirement to justify the substitution of a general rule for the particularized, albeit less onerous, proof otherwise necessary to deny benefits at step five.

Unfortunately, a cursory reading of *Campbell* could encourage the confusion evident in counsel's argument, as the case does broadly

---

2. The ALJ appears to have considered plaintiff's carpal tunnel syndrome only, or primarily, in terms of the effect the associated chronic pain might have on her ability to remain attentive and responsive to work assignments. *See* R. Vol. II at 49; *see also id.* at 15. While we have no quarrel with the ALJ's conclusion on this chronic pain issue, we emphasize that plaintiff has consistently claimed, and the record clearly indicates, that there is a functional component to her carpal tunnel syndrome as well.

invoke the "substantial majority" condition (citing *Talbot,* a grid case) at the outset of its assessment of a nongrid claim:

> If a claimant cannot return to his or her past work, the Secretary has the burden of producing evidence that the claimant retains the ability to do alternative work and that such work exists in the national economy. In order to satisfy this burden, the Secretary must show that a claimant can perform at least a substantial majority of the jobs in the claimant's residual functional capacity category.

*Campbell,* 822 F.2d at 1522–23 (citations omitted). We have not followed, retracted, or explained this aspect of *Campbell* in the years since its publication.

On the other hand, at least two of our district courts have expressly considered the language quoted above and concluded it cannot be read to require satisfaction of the "substantial majority" condition in step-five cases when the grids do not supply the basis for decision. *Stratton v. Sullivan,* 766 F.Supp. 1042, 1047–48 (W.D.Okla.1991); *Anderson v. Shalala,* No. 92–1196–MLB, 1993 WL 289203, at *2–*3, 1993 U.S.Dist. LEXIS 10672, at *6–*8 (D.Kan. July 13, 1993) (following *Stratton* ). The *Stratton* decision points out that the dispositive evidentiary deficiency in *Campbell* was not the Secretary's failure to satisfy the "substantial majority" condition per se, but the lack of evidence that the claimant could do *any* of the jobs cited by the ALJ—a ground for reversal even under the proper nongrid test. *See Stratton,* 766 F.Supp. at 1047–48 (citing *Campbell,* 822 F.2d at 1524). We agree with this reading of *Campbell,* which harmonizes its result with established step-five principles, and we take the present opportunity to disclaim any alternate interpretation that would confound the analysis of nongrid cases with inapposite evidentiary prerequisites imported from the grid context.

REVERSED. The cause is REMANDED to the district court with directions to remand, in turn, to the Commissioner for further proceedings consistent with this opinion.