UNITED STATES COURT OF APPEALS
**Filed 10/17/96**
FOR THE TENTH CIRCUIT

RUTH CROSSNO,

      Plaintiff-Appellant,

v.

SHIRLEY S. CHATER,
Commissioner, Social Security
Administration,[*]

      Defendant-Appellee.

No. 96-5009
(D.C. No. 94-C-974-J)
(N.D. Okla.)

ORDER AND JUDGMENT[**]

Before BRORBY, BARRETT, and EBEL, Circuit Judges.

---

[*]       Effective March 31, 1995, the functions of the Secretary of Health and Human Services in social security cases were transferred to the Commissioner of Social Security. P.L. No. 103-296. Pursuant to Fed. R. Civ. P. 25(d)(1), Shirley S. Chater, Commissioner of Social Security, was substituted for Donna E. Shalala, Secretary of Health and Human Services, as the defendant in this action. Although the caption reflects this substitution, in the text we continue to refer to the Secretary because she was the appropriate party at the time of the underlying decision.

[**]       This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

After examining the briefs and appellate record, this panel has determined unanimously to grant the parties' request for a decision on the briefs without oral argument. See Fed. R. App. P. 34(f) and 10th Cir. R. 34.1.9. The case is therefore ordered submitted without oral argument.

Plaintiff Ruth Crossno appeals from an order of the magistrate judge[1] affirming the decision of the Secretary to deny social security disability insurance benefits, for which she last qualified on September 30, 1990. Relying on expert vocational testimony, the Secretary concluded there were light and sedentary jobs in the national economy plaintiff could still perform and, accordingly, found her not disabled at step five of the controlling sequential analysis. See generally Williams v. Bowen, 844 F.2d 748, 750-52 (10th Cir. 1988). We closely examine the record as a whole to determine whether the Secretary's decision is supported by substantial evidence and adheres to applicable legal standards. Washington v. Shalala, 37 F.3d 1437, 1439 (10th Cir. 1994). For the reasons explained below, we find the Secretary's factual analysis internally inconsistent and her application of the law problematic. We therefore reverse and remand the case for further proceedings.

---

[1] Pursuant to 28 U.S.C. § 636(c)(1), the parties consented to proceed before the magistrate judge. Accordingly, our jurisdiction arises under § 636(c)(3) and 28 U.S.C. § 1291.

Plaintiff alleged disability based on an exostosis[2] of her right index finger, and a more general condition of degenerative arthritis affecting her knees, hips, and hands. The exostosis, which prompted surgery in November 1990 but had been noted in the medical records long before that time, clearly affected plaintiff before the September 1990 insurance cutoff date. Indeed, plaintiff testified to considerable pain and significant loss of function (inability to grip large or small objects, such as a mop or pencil) associated with the exostosis before the cutoff date. See Appellant's Appendix (App.) II at 87-88, 90-91. The arthritis, on the other hand, is not specifically treated as such in the medical record until a year later. Plaintiff complained at the December 1993 hearing of severe problems caused by her then-emergent arthritic condition, see id. at 89-91, while her retrospective testimony regarding this deteriorating condition was that "it was starting about [March 1990] . . . [b]ut it wasn't real bad then, it was getting worse. It's getting worse every day," id. at 89.

The ALJ began his evaluation of the medical evidence by stating that all of the records prepared by plaintiff's treating physicians after the eligibility cutoff

---

[2] At times, plaintiff has spoken of a crushed finger, but the medical record unequivocally diagnoses and treats an exostosis, which is a benign bone tumor consisting of an outgrowth of bone with a cartilaginous cap. See Steadman's Medical Dictionary at 549 (25th ed. 1989); The Merck Manual of Diagnosis and Therapy at 1351 (16th ed. 1992).

date are "not relevant for a determination of the claimant's disability status."[3] Id. at 60. Accordingly, the ALJ recognized a severe impairment affecting the right index finger afflicted with the exostosis, but appeared to reject any additional impairment associated with plaintiff's arthritic condition. See App. II at 59, 60-61, 64-65. On the other hand, however, he found plaintiff capable only of light exertional activity further limited by a need for periodic postural change, id. at 62, 65, which clearly corresponds to the systemic arthritis rather than the finger impairment. Moreover, while the vague and conclusory rationale for this exertional limitation--"that the claimant's testimony is credible to the extent that it is consistent with a residual functional capacity of light limited by a need to change positions from time to time," id. at 62--fails to specify its relation to plaintiff's arthritis (or anything else), that condition was the primary focus of the testimony referred to by the ALJ.

That brings us to the critical testimony elicited from the vocational expert. The ALJ posed the following hypothetical inquiry:

---

[3] This unqualified statement reflects a basic misunderstanding of disability onset determinations, which properly, often necessarily, rest on inferences from just such after-the-fact evidence. See, e.g., Flint v. Sullivan, 951 F.2d 264, 267 (10th Cir. 1991); Potter v. Secretary of Health & Human Servs., 905 F.2d 1346, 1348-49 (10th Cir. 1990). Further, this misunderstanding may have been the reason for the ALJ's asserted failure to develop the record by soliciting medical opinions regarding the prior onset and extent of plaintiff's arthritis. However, given the reversible error noted later in this order and judgment, we need not decide whether the legal misstatement quoted above was also material error.

-4-

Let's assume that we have a female, who is 47 years of age, has not a great education, with a so-so ability to read and write and use numbers. Nothing that would help you on an occupation particularly, other than understanding what is going on around. Now, if you would give me the definition of sedentary and light work.

. . . .

Okay. Now, let's also assume . . . that <u>the person has arthritis in the hands and the feet</u>, for which they are taking medication. And that they also suffer chronic pain, as a result of the arthritis, in that it is noticeable. But she can't get relief from the medication. And she continues to remain attentive and responsive with medication, and reasonably alert to perform sedentary or light functions. And she'll find it necessary to change her position from time to time to relieve her symptomatology. . . .

. . . .

Now, are there any jobs, unskilled nature, that she might perform?

Id. at 97-98 (emphasis added).

As the underscored passage reflects, this inquiry recognizes the arthritic condition established in the very medical records the ALJ categorically refused to consider (including its manifestation in plaintiff's hands, which, unlike its effect on her legs, was not even implicitly suggested in the ALJ's discussion of the evidence), while omitting any mention of the exostosis and attendant surgery affecting plaintiff's index finger--that is, the single, particularized impairment reflected in the pre-cutoff evidence and previously acknowledged as severe by the ALJ. "[T]he ALJ's failure to include in his hypothetical inquiry to the vocational expert *any* limitation in this [latter] regard violated the established rule that such

-5-

inquiries must include all (and only) those impairments borne out by the evidentiary record." Evans v. Chater, 55 F.3d 530, 532 (10th Cir. 1995). As in Evans, id. at 532, this omission is particularly significant in light of the expert's subsequent indication that the inability to grip and hold objects would impair plaintiff's ability to do the jobs identified in response to the ALJ's inquiry. See App. II at 99.

We note that even if the ALJ's reference to the arthritis in plaintiff's hands were meant somehow to encompass or incorporate the distinct exostosis impairment--an issue the ALJ never addressed--that would not cure the deficiency in the hypothetical. The arthritis reference, which focussed solely on pain and did not acknowledge any loss of function, would still be materially incomplete. See Evans, 55 F.3d at 532 n.2. As the ALJ deliberately did not address the arthritis evidence, we would be left to speculate why he recognized irremediable pain but no functional loss in the hands. This is particularly problematic given the ALJ's finding that the exostosis (assumed, arguendo, to be encompassed by the arthritis) was itself a severe impairment, i.e., a condition that "significantly limits" the claimant's "ability to do basic work activities." 20 C.F.R. § 404.1520(c).

In light of the problems noted above, the vocational expert's testimony cannot constitute the substantial evidence necessary to carry the Secretary's burden at step five, and the Secretary's determination of nondisability must,

accordingly, be reversed.  Given the inconsistency and obscurity of much of the ALJ's reasoning and the paucity of useful medical evidence in the record, significant reconsideration of the case and/or further evidentiary proceedings will be necessary before a definitive disposition will be possible.  Under the circumstances, additional discussion of the legal and factual objections raised to the Secretary's existing decision would serve no useful purpose.

The judgment of the United States District Court for the Northern District of Oklahoma is REVERSED, and the cause is REMANDED to the district court to remand, in turn, to the Commissioner for further proceedings consistent herewith.

Entered for the Court

James E. Barrett
Senior Circuit Judge