**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**AUG 7 1997**

**PATRICK FISHER**
**Clerk**

UNITED STATES COURT OF APPEALS

FOR THE TENTH CIRCUIT

STEVEN O. MUSGROVE,

Plaintiff-Appellant,

v.

JOHN J. CALLAHAN, Acting
Commissioner of Social Security,[*]

Defendant-Appellee.

No. 96-5217
(D.C. No. 95-CV-77-W)
(N.D. Okla.)

ORDER AND JUDGMENT[**]

---

[*]    Effective March 31, 1995, the functions of the Secretary of Health and Human Services in social security cases were transferred to the Commissioner of Social Security.  P.L. No. 103-296.  Pursuant to Fed. R. App. P. 43(c), John J. Callahan, Acting Commissioner of Social Security, is substituted for Shirley S. Chater, Secretary of Health and Human Services, as the defendant in this action. Although we have substituted the Commissioner for the Secretary in the caption, in the text we continue to refer to the Secretary because she was the appropriate party at the time of the underlying decision.

[**]    This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel.  The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

Before KELLY and HENRY, Circuit Judges, and DOWNES,[***] District Judge.

---

After examining the briefs and appellate record, this panel has determined unanimously to grant the parties' request for a decision on the briefs without oral argument. See Fed. R. App. P. 34(f); 10th Cir. R. 34.1.9. The case is therefore ordered submitted without oral argument.

Plaintiff appeals from an order of the magistrate judge[1] affirming the Secretary's decision to deny his application for social security benefits. We closely examine the record as a whole to determine whether the Secretary's decision is supported by substantial evidence and adheres to applicable legal standards. See Washington v. Shalala, 37 F.3d 1437, 1439 (10th Cir. 1994). The scope of our review, however, is limited to those issues properly preserved and presented by the claimant. See Berna v. Chater, 101 F.3d 631, 632 (10th Cir. 1996). Upon consideration of the contentions before us, we find no reversible error and, accordingly, affirm.

From July 11 to August 2, 1993, plaintiff was hospitalized with a severe aortic aneurysm, resulting in surgical repair of the artery, replacement of the

---

[***] Honorable William F. Downes, District Judge, United States District Court for the District of Wyoming, sitting by designation.

[1] Pursuant to 28 U.S.C. § 636(c)(1), the parties consented to proceed before the magistrate judge. Thus, our appellate jurisdiction arises under § 636(c)(3) and 28 U.S.C. § 1291.

aortic valve, and implantation of a permanent pacemaker for a related heart problem. His initial applications for supplemental income and disability benefits, filed July 23, 1993, asserted a disability based solely on this condition, which reduced his physical strength and endurance. After the initial administrative denial, plaintiff sought reconsideration and alleged an additional, psychological restriction regarding a fear of crowds. He also complained for a time to his treating physicians about stiffness and pain in his left shoulder, but did not note this on administrative filings. At the hearing before the administrative law judge (ALJ), plaintiff testified that he lacked the strength and endurance for the physical labor he had previously done, and was more susceptible to heat exhaustion, but could still stand for a half-hour at a time, walk a mile, and lift twenty pounds. He did not mention either shoulder pain or fear of crowds in response to open-ended inquiries about his impairments from both the ALJ and his own attorney.

The ALJ found plaintiff retained a residual functional capacity (RFC) for a full range of (unskilled) sedentary work, with an environmental limitation regarding extreme temperatures. This precluded his return to past, physically demanding work. The pertinent medical-vocational guideline (grid), however, directed a conclusion of "not disabled." See 20 C.F.R. Pt. 404, Subpt. P, App. 2, Rule 201.27. Purporting to use the grid only as a nondispositive "framework for

decisionmaking," but citing no other basis for his conclusion, the ALJ held there was a significant number of sedentary jobs plaintiff could perform despite the nonexertional temperature limitation, and, accordingly, found him not disabled at the fifth step of the governing analytical sequence. See generally Williams v. Bowen, 844 F.2d 748, 750-52 (10th Cir. 1988) (describing steps).

On this appeal, plaintiff contends the ALJ erred in: finding a sedentary RFC without a sufficient evidentiary basis; failing to develop and assess the evidentiary record adequately with respect to his fear of crowds and his left shoulder impairment; and conclusively relying on the grids for sedentary work when his impairments, exertional and nonexertional, significantly limited his capacity for such work. We shall take up each of these objections, in turn, below.

Sedentary work primarily involves sitting, with some occasional walking and standing, and lifting no more than ten pounds at a time. Thompson v. Sullivan, 987 F.2d 1482, 1488 (10th Cir. 1993). Plaintiff's own testimony at the hearing, noted above, established his ability to meet the walking, standing, and lifting criteria. As for sitting, plaintiff never alleged, testified, or suggested in the administrative proceedings, nor has he specifically argued at any stage of judicial review, that this basic component of sedentary work is compromised by his condition. We see no "compelling reason" to pursue this untrodden path sua

-4-

sponte.  See Berna, 101 F.3d at 633 (quoting Crow v. Shalala, 40 F.3d 323, 324 (10th Cir. 1994)).

This court recently discussed at some length the ALJ's duty "in every case to ensure that an adequate record is developed . . . consistent with the issues raised." Hawkins v. Chater, 113 F.3d 1162, 1164 (10th Cir. 1997) (quotation omitted).  In particular, Hawkins addressed the threshold question:  "How much evidence must a claimant adduce in order to raise an issue requiring further investigation?" Id. at 1167.  The court provided the following general answer:

> [T]he starting place must be the presence of some objective evidence in the record suggesting the existence of a condition which could have a material impact on the disability decision requiring further investigation.  Isolated and unsupported comments by the claimant are insufficient, by themselves, to raise the suspicion of the existence of a nonexertional impairment.
>
> Ordinarily, the claimant must in some fashion raise the issue sought to be developed, which, on its face, must be substantial. Specifically, the claimant has the burden to make sure there is, in the record, evidence sufficient to suggest a reasonable possibility that a severe impairment exists.  When the claimant has satisfied his or her burden in that regard, it then, and only then, becomes the responsibility of the ALJ to [investigate further].

Id. (citations omitted).  Further, the court noted that the threshold was even higher for cases, such as this one, in which the claimant had the benefit of representation during the administrative proceedings:

> Further, when the claimant is represented by counsel at the administrative hearing, the ALJ should ordinarily be entitled to rely on the claimant's counsel to structure and present claimant's case in

-5-

a way that the claimant's claims are adequately explored. Thus, in a counseled case, the ALJ may ordinarily require counsel to identify the issue or issues requiring further development. In the absence of such a request by counsel, we will not impose a duty on the ALJ to order a consultative examination unless the need for one is clearly established in the record.

Id. at 1167-68 (citations omitted).

Plaintiff and counsel did not mention either of his allegedly undeveloped claims at the administrative hearing. With respect to fear of crowds, the documentary record simply reflects a concern about adhering to post-surgical instructions to avoid infection. See Appellant's App., Vol. II at 76-77, 98-100. As for the left shoulder, medical reports indicate only a transient problem due to inactivity following surgery. See id. at 206 (Nov. 18, 1993--noting pain and significantly limited motion), 213 (Dec. 16, 1993--noting "some" loss of motion), 214 (Dec. 21, 1993--noting "no complaints today"), 215 (Jan. 4, 1994--no mention).[2] This record does not suggest, much less clearly establish, a reasonable possibility of severe impairment in either case. Consequently, further efforts by the ALJ to exhaust these unpressed and unpromising lines of inquiry were not

---

[2]     Plaintiff does cite to a March 14, 1994 note which recites, among many complaints, "pain of the shoulder/back/Rt. side." Appellant's App., Vol. II at 216. It is not clear that this even refers to the *left* shoulder problem apparently resolved months before. In any event, this passing reference, unaccompanied by any indication of severity, duration, or need for treatment, does not alter our conclusion.

required.  A fortiori, the ALJ properly found no vocational limitation on such grounds.

Finally, it appears the ALJ effectively relied on the grids.  However, given our rejection of all plaintiff's impairment-related objections, we are concerned here only with whether the temperature restriction noted by the ALJ foreclosed such reliance.  While a nonexertional limitation may preclude use of the grids, it will not if the job base underlying the grid is not significantly reduced.  See Evans v. Chater, 55 F.3d 530, 532-33 (10th Cir. 1995) (ability to perform "substantial majority" of work in RFC suffices for purposes of grids).  The Secretary's instructional rulings, which are premised on the same vocational sources as the grids, indicate that a temperature restriction like the one imposed here will not have a significant effect on the unskilled sedentary job base.  See SSR 96-9p, 1996 WL 374185, at *9 ("[F]ew occupations in the unskilled sedentary occupational base require work in environments with extreme cold, extreme heat, wetness, humidity, vibration, or unusual hazards. . . .  Even a need to avoid all exposure to these conditions would not, by itself, result in a significant erosion of the occupational base."); cf. SSR 83-14, 1983 WL 31254, at *4 (citing exclusion of outdoor jobs from sedentary occupational base, due to allergy, as example of vocationally insignificant environmental restriction).  Thus,

the sedentary-work grid relied on by the ALJ provided a proper basis for disposition of the case.

The judgment of the United States District Court for the Northern District of Oklahoma is AFFIRMED.

Entered for the Court


William F. Downes
District Judge