**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**NOV 23 1999**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

IRENE MOSE, on behalf of ALFRED
MOSE,

      Plaintiff-Appellant,

v.

KENNETH S. APFEL, Commissioner,
Social Security Administration,

      Defendant-Appellee.

No. 98-7183
(D.C. No. CV-97-485-S)
(E.D. Okla.)

---

**ORDER AND JUDGMENT** *

---

Before **BRORBY** , **EBEL** , and **HENRY** , Circuit Judges.

      After examining the briefs and appellate record, this panel has determined

unanimously to grant the parties' request for a decision on the briefs without oral

argument. See Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore

ordered submitted without oral argument.

---

\*     This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

Plaintiff-appellant Irene Mose appeals from an order of the district court affirming the Commissioner's decision denying her husband Alfred Mose's application for Social Security disability benefits.[1]  Mr. Mose filed for these benefits in December 1994.  He alleged disability based on diabetes, diabetic retinopathy, high blood pressure, neuropathy in both feet leading to amputation of toes, and a history of tuberculosis.  Mose's insured status expired on June 30, 1992, so in order to be entitled to benefits, he had to establish that he was disabled on or before that date.     See Miller v. Chater  , 99 F.3d 972, 975 (10th Cir. 1996).

The agency denied his application initially and on reconsideration.  On April 8, 1996, Mr. Mose received a de novo hearing before an administrative law judge (ALJ).  The ALJ determined that prior to July 1992, when his insured status expired, Mr. Mose retained the residual functional capacity (RFC) to perform the full range of sedentary work.  Although he could not return to his past relevant work as a truck driver, hauler or material handler, the ALJ found there were a significant number of other jobs which Mr. Mose could perform in the national or regional economy.  Applying the Medical-Vocational Guidelines, 20 C.F.R. pt. 404, Subpt. P, App. 2, Rule 201.19 (the grids), the ALJ concluded that appellant

---

[1]     Alfred Mose is now deceased, and his wife Irene Mose was substituted for him as plaintiff in the district court.

was not disabled within the meaning of the Social Security Act. The Appeals Council denied review, making the ALJ's decision the Commissioner's final decision.

We review the Commissioner's decision to determine whether the factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied. See Andrade v. Secretary of Health & Human Servs., 985 F.2d 1045, 1047 (10th Cir. 1993). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Fowler v. Bowen, 876 F.2d 1451, 1453 (10th Cir. 1989) (quotations omitted).

The Commissioner follows a five-step sequential evaluation process to determine whether a claimant is disabled. See Williams v. Bowen, 844 F.2d 748, 750-52 (10th Cir. 1988). The claimant bears the burden of establishing a prima facie case of disability at steps one through four. See id. at 751 n.2. If the claimant successfully meets this burden, the burden of proof shifts to the Commissioner at step five to show that the claimant retains sufficient RFC to perform work in the national economy, given his age, education and work experience. See id. at 751. This case was decided at step five, and so the burden was on the Commissioner to show that Mr. Mose could perform work in the national economy.

On appeal, appellant raises the following issues: (1) whether the ALJ's RFC determination is supported by substantial evidence; (2) whether the ALJ failed to consider Mr. Mose's impairments in combination; and (3) whether the ALJ inappropriately applied the grids to this case. Appellant focuses primarily on Mr. Mose's vision problems. The ALJ summarized the hearing testimony concerning these problems as follows:

> The claimant testified that his eyesight is blurry every day, words appear separated, and the condition lasts about hour and half [sic]. He had a cataract removed from right eye in 1988, one from his left eye in 1995, and he still has blurred vision. He is unable to tell the color of traffic lights, and someone has to tell him when it is green. He can't read street signs, but thinks he could recognize his wife across the street.

Appellant's App. Vol. II, part I at 25.

The ALJ went on to describe claimant's optometric history as follows:

> The record contains documentation of treatment of the claimant, since 1986, who was noted to have cataracts in both eyes at that time. On September 25, 1986, the record indicates that the claimant had cataract surgery on the right eye. In November 1986, cataract surgery was scheduled for the left eye, but annotation indicated that there were no funds available for surgery at that time.
>
> In April 1988, the claimant complained that he could not see out of the right eye and noted a spot of blood in the corner of the eye. On July 26, 1988, the claimant was diagnosed as having diabetic retinopathy in both eyes with vitreous hemorrhage in the right. History was noted of cataract extraction in the right eye in 1986 and laser surgery 2 months earlier in the right eye. A left eye cataract was also noted. The claimant's visual acuity was noted to be 20/50 bilaterally. On July 29 and August 5, 1988, photocoagulation of diabetic retinopathy in the [sic] both eyes was performed by James B.

-4-

Wise, M.D. Removal of the left eye cataract, after a period of time to clear, was recommended. Cataract surgery on the left eye was performed in [sic] May 24, 1995.

Id. at 26 (ALJ's record references omitted).

The ALJ then opined as follows:

Following the last treatment in October 1988, the record does not indicate significant visual complaints or any treatment through June 1992 and beyond. In fact, further significant visual treatment or complaints are not indicated until May 24, 1995 when the left cataract surgery was performed.

So, while the claimant has had significant visual problems prior to July 1992, there [sic] limiting effect was transitory based on the descriptions in the medical record. Right cataract surgery was performed in September 1986. The claimant testified that he worked until 1987 or 1988 hauling hay. The record indicates that the claimant had earnings in 1986 and 1987. He further testified that he mostly drove while hauling which would indicate he had sufficient visual ability for that task after surgery. Complaints identified as vitreous hemorrhage occurred in April 1988 with laser surgery in July and August followed by notation that vision had improved in right eye that the left eye had quieted down fairly considerably with very little in the way of abnormal vessels after only one treatment. Additionally, Dr. Wise thought it could be left alone for time being [sic] (Exhibit 25, pa[g]e 6). In fact, the left cataract surgery was not performed until 1995, well after the claimant was last insured.

Id. at 28.

So long as a claimant is not legally blind, the Commissioner evaluates

visual impairments the same as any other impairment in determining disability.

See 20 C.F.R. § 416.985. Visual impairments are nonexertional impairments

which must be considered in determining a claimant's RFC. See 20 C.F.R.

§ 404.1545(d); Trimiar v. Sullivan, 966 F.2d 1326, 1328 n.3 (10th Cir. 1992).

The ALJ found, however, that Mr. Mose had no nonexertional impairments.

Mr. Mose's vision clearly was impaired to some degree. The crux of the issue here is whether his vision problems constituted a significant nonexertional impairment. Only significant nonexertional impairments limit the claimant's ability to do the full range of work within a classification and prevent the ALJ from relying on the grids. See Thompson v. Sullivan, 987 F.2d 1482, 1488 (10th Cir. 1993). Otherwise put, the grids may still be used if a claimant has nonexertional impairments which do not significantly reduce the underlying job base. See Evans v. Chater, 55 F.3d 530, 532 (10th Cir. 1995) (ability to perform "substantial majority" of work in RFC assessment suffices for purposes of grids); Glass v. Shalala, 43 F.3d 1392, 1396 (10th Cir. 1994).

Having carefully reviewed the record, we conclude that the ALJ's conclusion that Mr. Mose had no significant nonexertional impairments is supported by substantial evidence. In 1988, Mose underwent successful laser surgery on his eyes. After the treatments were completed, Dr. Wise rated his vision at 20/40 in his left eye, and 20/60 in his right eye. Mose failed to present any evidence showing that this slight visual impairment would prevent him from performing the substantial majority of work in the sedentary classification. There

is no medical evidence that his vision worsened between the 1988 surgeries and the date on which his insured status expired.

The ALJ's conclusion that Mr. Mose's foot problems did not significantly impair his ability to perform the full range of sedentary work is also supported by substantial evidence. Prior to the expiration of his insured status, Mose suffered from foot ulcers which his doctors successfully treated. Beginning in December 1992, approximately six months after his insured status expired, he began to experience a worsening of his foot problems, which ultimately led to the amputation of most of his toes. This exacerbation, however, occurred after his insured status expired and is not related to his ability to work during the relevant time period.

Mr. Mose also suffered from a number of complications of diabetes. There was no medical evidence, however, that these complications, or his history of successfully-treated tuberculosis, would have prevented him from performing the full range of sedentary work prior to the time his insured status expired.

We conclude that the ALJ's RFC evaluation is supported by substantial evidence. The ALJ did not err in applying the grids. The only remaining question is whether the ALJ properly considered Mr. Mose's impairments in combination. Our review of the ALJ's decision shows that he considered the impact of Mose's foot problems, vision problems and high blood pressure on his

ability to work.  While he did not specifically discuss miscellaneous complications of Mose's diabetes or his history of tuberculosis, as we have mentioned there was no medical evidence suggesting that these complications restricted his ability to work.  Moreover, that the ALJ discussed the other problems one at a time does not mean that he failed to considered them in combination.  We find no error.

The judgment of the United States District Court for the Eastern District of Oklahoma is AFFIRMED.

Entered for the Court


Robert H. Henry
Circuit Judge