**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**SEP 21 2000**

**PATRICK FISHER**
**Clerk**

UNITED STATES COURT OF APPEALS

FOR THE TENTH CIRCUIT

---

HELEN PETTIGREW,

      Plaintiff-Appellant,

v.

KENNETH S. APFEL, Commissioner,
Social Security Administration,

      Defendant-Appellee.

No. 99-7080
(D.C. No. 97-CV-552-B)
(E.D. Okla.)

---

ORDER AND JUDGMENT   *

---

Before **BRORBY** , **ANDERSON** , and **MURPHY** , Circuit Judges.

---

After examining the briefs and appellate record, this panel has determined

unanimously to grant the parties' request for a decision on the briefs without oral

argument. See Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore

ordered submitted without oral argument.

---

 *     This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

Plaintiff Helen Pettigrew appeals the district court's affirmance of the final decision by the Commissioner of Social Security denying her application for disability benefits. Because the decision is not supported by substantial evidence and several legal errors occurred, we reverse and remand for further proceedings.

Plaintiff filed an application for disability benefits on June 20, 1995, alleging an inability to work due to neuropathy in all extremities, and pain and weakness in her hands. After a hearing, an administrative law judge (ALJ) found that although plaintiff could not return to her former work, she retained the ability to perform a significant number of jobs in the economy and thus was not disabled. The Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner. The district court affirmed, and this appeal followed.

We review the Commissioner's decision to determine whether the factual findings are supported by substantial evidence and whether correct legal standards were applied. See Qualls v. Apfel, 206 F.3d 1368, 1371 (10th Cir. 2000). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quotation omitted). We may "neither reweigh the evidence nor substitute our judgment for that of the agency." Casias v. Secretary of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991).

Plaintiff argues that the Commissioner's decision is not supported by substantial evidence because (1) the ALJ ignored undisputed evidence that she suffers from compressive injuries to her hands/arms that limit her ability to perform repetitive movements; (2) the ALJ failed to give controlling weight to the opinions of plaintiff's treating physicians; (3) the hypothetical presented to the vocational expert was legally deficient because it did not include any restrictions on repetitive movement; and (4) the ALJ failed to analyze plaintiff's pain properly under Luna v. Bowen, 834 F.2d 161, 162-64 (10th Cir. 1987). After reviewing the record, we agree with all of plaintiff's arguments.

The undisputed medical evidence shows that plaintiff has two separate, but related, conditions. Plaintiff is suffering from a hereditary peripheral neuropathy syndrome that causes pain in her feet, legs, and arms. She is also suffering from bilateral compressive neuropathies to the median and ulnar nerves in her arms/wrists, for which she underwent surgery in 1991 and 1993. See R. at 70-72. Despite the surgeries, plaintiff's condition has worsened, as shown by nerve conduction studies done in 1994 and 1995. See id.

Plaintiff has been treated by three physicians for her conditions. From approximately April 1993 through June of 1995, Dr. Goodman, a neurologist, treated her on eighteen occasions. His treatment notes document both plaintiff's compressive injuries–carpal tunnel syndrome and cubital tunnel syndrome–and

-3-

her familial neuropathy. See id. at 86-90. Dr. Goodman noted the continuing deterioration of plaintiff's condition, leading him to recommend that she discontinue working. See id. at 81 ("Her hands are getting worse and she is having difficulty working and the constant discomfort she is in is hard to live with. . . . With progressiveness of her neuropathy and her constant discomfort I do not think she can continue to work. . . . Although the neuropathy is not caused by work the work aggravates the pain and discomfort that she has. . . . So, it is my recommendation to her that she . . . consider retiring from work.").

A second neurologist, Dr. Kareus, treated plaintiff during 1994 and 1995. Dr. Kareus opined that plaintiff was suffering from a hereditary peripheral neuropathy that made her vulnerable to compressive injuries to the nerves in her arms and wrists. See id. at 72, 78-80, 84. He also noted that plaintiff's condition was deteriorating; that work, especially repetitive activity, seemed to exacerbate her symptoms; and that her condition improved once she stopped working. See id. at 80, 83-85.

Dr. Heim, an orthopedist to whom plaintiff was referred, noted plaintiff's continuing problems and her efforts to resolve the symptoms including surgery, splinting, anti-inflammatories, and rest. After noting that plaintiff's symptoms were somewhat alleviated by rest, the orthopedist opined that plaintiff's residual problems were permanent, and that she should avoid repetitive activities. See id.

at 77 ("I think . . . damage to the ulnar nerve was such that it did not have the capacity to heal . . . . The median nerve has obviously been released and has improved, but the architecture of the wrist has been changed enough so that repetitive activity is aggravating her surgery site. . . . I would not feel that [plaintiff] is a good candidate for repetitive activities.").

In August 1995, social security consulting physician Dr. Dean noted plaintiff's condition of familial peripheral neuropathy but found no physical limitations. Dr. Dean did not address plaintiff's prior surgeries, however, and did not discuss her compressive neuropathies at all.

Based on this evidence, the ALJ determined that plaintiff was suffering from hereditary peripheral neuropathy only, and that she retained the ability to perform sedentary work limited only by her inability to grip or grasp on a prolonged basis. The ALJ did not explain why he disregarded medical evidence of compressive neuropathies in plaintiff's arms and hands or her treating physicians' opinions that she should avoid repetitive activity.

"A treating physician's opinion must be given substantial weight unless good cause is shown to disregard it." Goatcher v. United States Dep't of Health & Human Servs., 52 F.3d 288, 289-90 (10th Cir. 1995). The opinion is entitled to controlling weight "if it is well supported by clinical and laboratory diagnostic techniques and if it is not inconsistent with other substantial evidence in the

record." Castellano v. Secretary of Health & Human Servs., 26 F.3d 1027, 1029 (10th Cir. 1994). The ALJ must give specific, legitimate reasons for disregarding a treating physician's opinion that a claimant is disabled. See Goatcher, 52 F.3d at 290.

Here, substantial evidence in the record supports the opinions of plaintiff's treating physicians that she is suffering from two separate, albeit related, conditions, and nothing in consultative physician Dean's report contradicts these opinions. Further, the restrictions placed by the treating physicians on plaintiff's ability to perform repetitive motions appear to be well-supported, and should have been given controlling weight in the absence of any contrary indication in the consultative physician's report. The ALJ erred, therefore, in disregarding plaintiff's treating physicians' diagnoses and their opinions that she is limited in her ability to do repetitive movements.

The ALJ's failure to credit the treating physicians' opinions undermines the vocational expert's assessment of plaintiff's abilities as well. At the hearing, the ALJ posed the following hypothetical to the vocational expert:

> I would ask you to generally assume that the claimant's standing and walking limitations may confine her to the performance of sedentary work. She could not perform–she can perform manipulative activities with both hands involving fingering and feeling but she cannot involve herself in handling activities that require frequent or prolonged gripping or grasping. And I, I don't know. These . . . manipulative limitations are always difficult to articulate, but what we're talking about is that her ability for fingering, that is moving

-6-

her fingers in coordinated fashion is not limited and she doesn't have a limitation of feeling, size, shape, temperature and texture of objects but she, she can do some grasping and gripping but she can't do grasping and gripping on a frequent, that is more than–in other words, she couldn't do so up to two-thirds of the workday or gripping that is prolonged. That is where she has to sustain the grip for prolonged periods.

R. at 130. The two jobs identified by the vocational expert based on this hypothetical were a cashier job and an interviewer job requiring extensive keyboard use. As both of these jobs involve repetitive movements, it is clear that the ALJ's failure to include a limitation on such activity in his hypothetical invalidated his final decision regarding plaintiff's ability to work. See Evans v. Chater, 55 F.3d 530, 531-32 (10th Cir. 1995) (reversing final decision where claimant suffered from bilateral carpal tunnel and the ALJ's hypothetical failed to include limitations on claimant's ability to perform repetitive movements and/or work requiring strength or dexterity that would place stress on her wrists).

Plaintiff also argues that the ALJ failed to analyze her pain under the Luna v. Bowen framework. Under Luna, an ALJ must determine whether a claimant's subjective claims of pain are credible. See 834 F.2d at 163. In making this determination, the ALJ should consider such factors as "a claimant's persistent attempts to find relief for his pain and his willingness to try any treatment prescribed, regular use of crutches or a cane, regular contact with a doctor . . . the claimant's daily activities, and the dosage, effectiveness, and side effects of

medication." Id. at 165-66. It is not sufficient for the ALJ simply to list these factors and to state that he has considered them. He is required to "explain why the specific evidence relevant to each factor led him to conclude [the] claimant's subjective complaints were not credible." Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995).

Here, the ALJ simply stated that "[t]he claimant's statements concerning her impairment and its impact on her ability to work are not entirely credible in light of the degree of medical treatment required, the reports of the treating and examining practitioners, and the record as a whole." R. at 14. In support, the ALJ pointed to two alleged inconsistencies in plaintiff's testimony, stating:

> The undersigned notes that claimant alleges the surgery has aggravated the neuropathy and weakened the grip, but she testified that she can button a button, write, open a car door, and take a lid off of a catsup bottle, but cannot pick up a cast iron skillet. When asked if she felt she could perform a job where she would not have to be on her feet or use her hands repetitively, she said that she did not think so because her medication made her drowsy. It is interesting to note that earlier in her testimony, she stated that she lies down due to fatigue.

R. at 14. We do not view either of these statements as inconsistent, however. The ALJ did not discuss any other evidence to support his conclusion that plaintiff's complaints were incredible, and did not explain why he rejected the undisputed evidence that plaintiff has sought extensive treatment over the years; has shown a willingness to try different treatments, including bilateral surgeries,

splinting, anti-inflammatories, and rest; that she takes strong pain medication despite consistent reports to her doctors that it makes her drowsy; and that she performs limited activity. Moreover, two of plaintiff's treating physicians have opined that she should discontinue working based on the severity of her pain. Given this record, the ALJ's cursory analysis of plaintiff's pain was inadequate under Luna and Kepler, and cannot stand.

The judgment of the United States District Court for the Eastern District of Oklahoma is REVERSED, and the case is REMANDED with directions to remand the case to the Commissioner of Social Security for further proceedings.

Entered for the Court


Michael R. Murphy
Circuit Judge