**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**August 27, 2007**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

ELMER C. TANKERSLEY,

      Plaintiff-Appellant,

v.

MICHAEL J. ASTRUE,
Commissioner, Social Security
Administration,

      Defendant-Appellee.

No. 06-7122
(D.C. No. CIV-05-506-KEW)
(E.D. Okla.)

---

**ORDER AND JUDGMENT** [*]

---

Before **HARTZ**, **EBEL**, and **TYMKOVICH**, Circuit Judges.

---

Elmer Tankersley appeals from an order of the district court affirming the

Commissioner's denial of his applications for disability insurance and

supplemental security income benefits under the Social Security Act. We have

jurisdiction under 28 U.S.C. § 1291 and 42 U.S.C. §§ 405(g) and 1383(c)(3).

---

[*]    After examining the briefs and appellate record, this panel has determined unanimously to grant the parties' request for a decision on the briefs without oral argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

After "review[ing] the Commissioner's decision to determine whether his factual findings were supported by substantial evidence in light of the entire record and to determine whether he applied the correct legal standards," *Hinkle v. Apfel*, 132 F.3d 1349, 1351 (10th Cir. 1997), we affirm.

## I. Background

Mr. Tankersley was born on September 18, 1959. He has a ninth-grade education and has worked as a forklift driver and asphalt layer.

In 1998 Dr. Michael Standefer examined Mr. Tankersley and determined that he had myofascial pain syndrome and degenerative disc disease in his lumbar spine but no obvious underlying surgical problem. Accordingly, Dr. Standefer recommended conservative treatment.

Dr. Standefer examined Mr. Tankersley again in July 2003. Diagnostic tests showed focal canal stenosis secondary to a diffuse disc bulge as well as ligament and facet hypertrophy at the L4-L5 level. Noting that Mr. Tankersley's condition had worsened since 1998, Dr. Standefer recommended surgery and opined that Mr. Tankersley could not work for a minimum of four months. Mr. Tankersley stopped working on July 29, 2003, his alleged onset date, and on August 8 Dr. Standefer performed the surgery, which included a lumbar laminectomy, diskectomy, and fusion.

Mr. Tankersley saw Dr. Standefer for a series of follow-up examinations from September 2003 through February 2004 and attended physical therapy. His

recovery went well, and after the February examination Dr. Standefer released him from the clinic, advising him to avoid heavy lifting and repeated bending, ideally not lifting more than 35-45 pounds and then only on occasion. Dr. Standefer also advised him to alternate sitting, standing, and walking, and to pursue an exercise program. Dr. Standefer further stated that a reasonable impairment rating would be 12% and that Mr. Tankersley could seek light-duty work. For future care, Dr. Standefer referred Mr. Tankersley to Dr. Richard Dotson, D.O.

A few months later, on June 24, 2004, Dr. Standefer completed a physical residual functional capacity (RFC) evaluation form. Dr. Standefer indicated that Mr. Tankersley's ability to sit, stand, and walk in an eight-hour workday would vary—he would be able to perform each activity from one to three hours at a time and from one to four hours in total. In an undated note, Dr. Standefer clarified that the amount of time Mr. Tankersley would be able to sit, stand, or walk at one time or in total "would vary according to the day." Admin. R. at 192.

On April 4, 2005, Dr. Dotson, whom Mr. Tankersely apparently had been seeing for a year, completed an RFC evaluation form. Dr. Dotson indicated that Mr. Tankersley could stand and/or walk a total of less than two hours in a normal eight-hour workday, with normal breaks, and that he required a cane to walk. Dr. Dotson also indicated (1) that Mr. Tankersley "must periodically alternate sitting and standing to relieve pain or discomfort" based on his degenerative disc

disease, back surgery, and decreased lumbar range of motion, *id.* at 190, and (2) that he had a number of nonexertional limitations.

After Mr. Tankersley's benefits applications were denied initially and upon reconsideration, he received a hearing before an administrative law judge (ALJ) on April 6, 2005. The ALJ heard testimony from Mr. Tankersley and a vocational expert (VE) and issued a written decision in which he applied the familiar five-step sequential evaluation process set forth in 20 C.F.R. §§ 404.1520(a)(4) and 416.920(a)(4). *See Williams v. Bowen*, 844 F.2d 748, 750-52 (10th Cir. 1988) (explaining five-step process). At the first three steps the ALJ found that Mr. Tankersley had not engaged in substantial gainful activity since his alleged onset date, and that his degenerative disc disease, although a severe impairment, did not meet or medically equal the severity of any impairment listed in 20 C.F.R., Part 404, Subpart P, Appendix 1.[1]

Proceeding to step four, the ALJ accorded less than controlling weight to Dr. Standefer's opinion concerning Mr. Tankersley's ability to sit, stand, and walk, and greater weight to Dr. Dotson's opinion. He gave only limited weight to the opinions of nonexamining state-agency consultants, who had opined that Mr. Tankersley could sit for a total of about six hours in an eight-hour work day and stand and/or walk for that same amount of time. Based on the medical

---

[1]     The ALJ also found that the evidence did not establish a medically determinable impairment concerning Mr. Tankersley's complaints of headaches. Mr. Tankersley has not taken issue with that finding.

evidence and his finding that Mr. Tankersley was not totally credible regarding his limitations, the ALJ determined, in relevant part, that Mr. Tankersley is "limited to lifting no more than 10 pounds; . . . is able to stand and/or walk for less than 2 hours during an 8-hour workday; . . . [and] requires the use of a cane, as well as the ability to alternate between standing and sitting[.]"  Admin. R. at 22.  Because of these limitations, which tracked Dr. Dotson's RFC evaluation, the ALJ found that Mr. Tankersley could not perform his past relevant work.

At step five the ALJ found that because Mr. Tankersley was incapable of performing the full range of sedentary work, the Medical-Vocational Guidelines could be used only as a framework for the disability determination.  Using that framework the ALJ relied on the testimony of the VE that, even with the postural and other limitations reflected in Dr. Dotson's RFC evaluation, Mr. Tankersley could work as an order clerk or a surveillance-system monitor.  The ALJ determined that those jobs exist in significant numbers in the national economy and accordingly found Mr. Tankersley not disabled.  The appeals council denied review, and the district court affirmed the Commissioner's decision.  This appeal followed.

## II. Discussion

The sole issue raised on appeal is whether the ALJ properly disregarded the VE's testimony on cross-examination by Mr. Tankersley's attorney that he would not be competitive for jobs, and perhaps completely unemployable, if he could not

consistently sit, stand, and walk in combination for an eight-hour workday. The ALJ could disregard this testimony only if he could properly find that the hypothetical limitations were not supported by the evidence. *See Evans v. Chater*, 55 F.3d 530, 532 (10th Cir. 1995).

Mr. Tankersley contends that both Dr. Standefer and Dr. Dotson reported that he "would not be able to perform a combination of sitting, standing, and walking for eight hours per day every day." Aplt. Br. at 14. But we think that the ALJ could reasonably interpret Dr. Dotson's report as saying that Mr. Tankersley could regularly work such an eight-hour day. (Mr. Tankersley has not contended that the ALJ was required to accept Dr. Standefer's opinions.)

Dr. Dotson completed a form regarding Mr. Tankersley's physical limitations. With respect to standing and walking, Dr. Dotson checked boxes saying that Mr. Tankersley's standing and/or walking was affected by his impairment, that he could stand and/or walk less than two hours in an eight-hour workday, and that he needed an "assistive device" (a cane) for walking. As for sitting, Dr. Dotson checked boxes saying that Mr. Tankersley's sitting was affected by his impairment and that he must periodically alternate sitting and standing to relieve discomfort. He did not check either of the remaining two boxes under the "Sitting" heading: one that stated that Mr. Tankersley could sit about six hours in an eight-hour workday and one that stated that he could sit less than six hours in an eight-hour workday.

Mr. Tankersley infers from Dr. Dotson's failure to check the box stating that he could sit about six hours per workday that Dr. Dotson thought that Mr. Tankersley could sit less than six hours a day. Because Dr. Dotson had checked the box that Mr. Tankersley could stand or walk less than two hours per workday, Mr. Tankersley concludes that Dr. Dotson reported that he could not walk, stand, and sit for a complete eight-hour workday. In our view, however, Mr. Tankersley's first inference is faulty. Not only did Dr. Dotson fail to check the box saying that Mr. Tankersley could sit about six hours per workday, but he also failed to check the box saying that Mr. Tankersley could sit *less than* six hours per workday. The natural inference is that Dr. Dotson thought that Mr. Tankersley could sit *more than* six hours per workday, at least so long as he could periodically stand to relieve discomfort. And nothing suggests that Dr. Dotson thought that Mr. Tankersley could not do so on a regular basis.

Thus, the ALJ reasonably interpreted Dr. Dotson's opinion to be that Mr. Tankersley can regularly complete an eight-hour workday in a sedentary job if he is able to alternate sitting and standing. The ALJ therefore could properly disregard the VE's testimony in response to cross-examination by Mr. Tankersley's attorney.

### III. Conclusion

Based on the foregoing, we conclude that substantial evidence supported the Commissioner's decision and the correct legal standards were applied. The judgment of the district court is AFFIRMED.

Entered for the Court

Harris L Hartz
Circuit Judge